T.C. Memo. 2006-150

UNITED STATES TAX COURT

ROY AND ANTONETTE BARNES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10788-05L.              Filed July 24, 2006.

<u>Terri A. Merriam</u>, <u>Jaret R. Coles</u>, <u>Asher B. Bearman</u>, and
<u>Jennifer A. Gellner</u>, for petitioners.

<u>Thomas N. Tomashek</u> and <u>Gregory M. Hahn</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioners petitioned the Court under section
6330(d) to review the determination of respondent's Office of
Appeals (Appeals) sustaining a proposed levy relating to $342,012
of Federal income taxes (inclusive of interest) owed by

petitioners for 1981 through 1986.[1]  Petitioners argue that

Appeals was required to accept their offer of $32,000 to

compromise what they estimate is their approximately $400,000

Federal income tax liability (inclusive of interest) for 1981

through 1998.[2]  We decide whether Appeals abused its discretion

in rejecting that offer.[3]  We hold it did not.

FINDINGS OF FACT[4]

The parties filed with the Court stipulations of fact and

accompanying exhibits.  The stipulated facts are found

---

[1] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code.  Dollar amounts are rounded.

[2] While the proposed levy related only to 1981 through 1986, petitioners offered to compromise their liability for 1987 through 1998 as well.

[3] Petitioners also dispute respondent's determination that they are liable for increased interest under sec. 6621(c).  This interest relates to deficiencies attributable to "computational adjustments", see secs. 6230(a)(1) and 6231(a)(6), made following the Court's decision in Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515.  As to this dispute, the parties have agreed to be bound by a final decision in Ertz v. Commissioner, docket No. 20336-04L, which involves a similar issue.

[4] Following a trial of this case, the Court ordered each party to file an opening brief of no more than 25 pages. Petitioners filed a 25-page opening brief that attempts to circumvent the Court's order by incorporating (1) lengthy arguments made in their 38-page pretrial memorandum and (2) 90 paragraphs of stipulated facts.  To the extent that an argument or proposed finding of fact is not specifically set forth in petitioners' opening brief, we decline to consider it.

accordingly.  When the petition was filed, petitioners resided in Pasco, Washington.

Beginning in 1984, petitioners' Federal income tax returns claimed losses and credits from their involvement in various partnerships organized and operated by Walter J. Hoyt, III (Hoyt).  The partnerships were Shorthorn Genetic Engineering 1984-4, Timeshare Breeding Services 1989-1, Timeshare Breeding Syndicate Joint Venture, Timeshare Breeding Service 1989-3 J.V., and Hoyt and Sons Trucking.  Hoyt was each partnership's general partner and tax matters partner, and the partnerships were all subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 401, 96 Stat. 648.  Hoyt was convicted on criminal charges relating to the promotion of these partnerships.

Petitioners' claim to the losses and credits resulted in the underreporting of their 1981 through 1986 taxable income.  On August 16, 2003, respondent mailed to petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing.  The notice informed petitioners that respondent proposed to levy on their property to collect Federal income taxes that they owed for 1981 through 1986.  The notice advised petitioners that they were entitled to a hearing with Appeals to review the propriety of the proposed levy.

On September 5, 2003, petitioners asked Appeals for the referenced hearing.  On January 11, 2005, Linda Cochran (Cochran), a settlement officer in Appeals, held the hearing with petitioners' counsel.  Cochran and petitioners' counsel discussed two issues.  The first issue concerned petitioners' intent to offer to compromise their 1981 through 1998 Federal income tax liability due to doubt as to collectibility with special circumstances and to promote effective tax administration.  Petitioners contended that Appeals should accept their offer as a matter of equity and public policy.  Petitioners stated that it took a long time to resolve the Hoyt partnership cases and noted that Hoyt had been convicted on the criminal charges.  The second issue concerned an interest abatement case under section 6404(e) that petitioners had pending in this Court.  That case related to the same years at issue here.  Petitioners claimed that the proposed levy should be rejected because that case was pending.

On February 15, 2005, petitioners tendered to Cochran on Form 656, Offer in Compromise, a written offer to pay $32,000 to compromise their approximately $400,000 liability.  Petitioners supplemented their offer with a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, four letters totaling approximately 65 pages, and volumes of documents.  The Form 433-A reported that petitioners

owned assets with a total current value of $144,322, inclusive of the following:[5]

| Assets | Current value |
|---|---|
| Cash | $3,528 |
| Investments | 3,438 |
| Cash value of life insurance | 22,771 |
| Vehicles: | |
|   1989 Pontiac LE | 225 |
|   1997 Chevrolet Scottsdale | 500 |
|   1999 Buick LeSabre | 3,860 |
|   2000 BMW motorcycle | 3,500 |
| Home | 89,000 |
| Other real property | 17,500 |
| | 144,322 |

The Form 433-A also reported that petitioners had a single debt of $7,236, all of which was attributable to the 1999 Buick LeSabre, and the following monthly items of income and expense:

| Items of income | Amount |
|---|---|
| Husband's pension | $3,572 |
| RAVA annuity payout | 1,029 |
| IDS life insurance annuity | 106 |
| | 4,707 |

| Items of expense | Amount |
|---|---|
| Food, clothing, and miscellaneous | $1,020 |
| Utilities | 657 |
| Transportation--Purchase | 189 |
| Transportation--Operation | 399 |
| Medical expenses | 1,087 |
| Taxes (Income) | 554 |
| Life insurance | 300 |
| Other expense | 500 |
| | 4,706 |

---

[5] Form 433-A states that each asset reported on the form should be valued at its "Current value", defined on the form as "The amount you could sell the asset for today".

Cochran determined that petitioners' net realizable equity in each of their reported assets was the same as its reported value, except she reduced the reported value of each vehicle by 20 percent.[6]  Cochran summarized petitioners' assets and liabilities as follows:

| Assets | Fair market value | Quick sale value | Encumbrance | Net realizable equity |
|---|---|---|---|---|
| Cash | $3,528 | -- | -- | 3,528 |
| Investments | 3,438 | -- | -- | 3,438 |
| Cash value of life insurance | 22,771 | -- | -- | 22,771 |
| Vehicles: | | | | |
|   1989 Pontiac LE | 225 | 180 | -- | 180 |
|   1997 Chevrolet Scottsdale | 500 | 400 | -- | 400 |
|   1999 Buick LeSabre | 3,860 | 3,080 | 7,236 | -0- |
|   2000 BMW motorcycle | 3,500 | 2,800 | -- | 2,800 |
| Home | 89,000 | -- | -- | 89,000 |
| Other real property | 17,500 | -- | -- | 17,500 |
| | 144,322 | 6,460 | 7,236 | 139,617 |

As to the reported expenses, Cochran accepted all of those expenses except for the $500 "other expense" which petitioners failed to substantiate as to either its source or amount.[7] Cochran determined that petitioners' monthly excess income (i.e., monthly income less monthly expenses) was $501 ($4,707 - ($4,706 - $500)), that petitioners' income potential for the next

---

[6] Cochran noted that the reported values of petitioners' home and other real property were ascertained from their assessed values and not from appraisals or current market prices, which could be higher.  Cochran also was told by petitioners that they had ascertained the value of each vehicle by using its trade-in value and considering its condition to be "fair".

[7] Cochran allowed petitioners' medical expenses in full, although she considered the amount to be greater than average. Cochran noted that petitioners' 2003 Federal income tax return claimed a deduction for $8,641 of medical expenses that they paid during that year.

48 months was approximately $24,000 ($501 x 48 = $24,048),[8] and that petitioners' reasonable collection potential was $163,617 (future income potential of $24,000 + net realizable equity of $139,617). As an alternate calculation, Cochran took into account petitioners' $500 other expense (so as to eliminate any consideration of future income potential) and recomputed their reasonable collection potential at their net realizable equity of $139,617.[9] Cochran performed the alternate calculation because she believed that the "other expense" could represent an otherwise allowable expense such as attorney's fees, although not reported as such.

On May 12, 2005, Appeals issued petitioners the notice of determination sustaining the proposed levy. The notice concludes that petitioners' $32,000 offer-in-compromise is not an appropriate collection alternative to the proposed levy. The notice, quoting in part Internal Revenue Manual (IRM) section 5.8.11.2.2.3, states that petitioners' offer does not meet the Commissioner's guidelines for consideration of an offer-in-compromise due to doubt as to collectibility with special circumstances. The notice, citing IRM sections 5.8.11.1.2 and

---

[8] Cochran used a 48-month factor because petitioners were offering to compromise their tax liability by paying cash. See Internal Revenue Manual (IRM) sec. 5.8.5.5.

[9] Cochran noted that the alternate calculations would be $131,617 and $107,617 were she to take into account the $32,000 proposed offer.

5.8.11.2.5, states that petitioners' offer also does not meet the Commissioner's guidelines for consideration as an offer-in-compromise to promote effective tax administration.

As to petitioners' offer-in-compromise due to doubt as to collectibility, the notice states more specifically that

> the taxpayers [petitioners] have the ability to pay more than the offer amount from the equity in their assets while still meeting their necessary basic living expenses, in accordance with IRM 5.8.5.5.1. The taxpayers have an ability to pay substantially more than the amount being offered, as per the guidelines of Internal Revenue Manual 5.8.5.3.1. The taxpayers' circumstances have been documented and considered but are insufficient to permit acceptance of an offer amount that is, at best, less than 30% of the RCP [reasonable collection potential] ($32,000/$107,617).

As to petitioners' offer-in-compromise to promote effective tax administration, the notice states:

> Analysis of the taxpayers' finances shows that the taxpayers' equity in assets plus present and future income are less than the assessed amounts to be compromised. The taxpayers, therefore, fail to meet the requirements for consideration of an offer in compromise based on Effective Tax Administration, as per the guidelines of Internal Revenue Manual 5.8.11.1(2).

The notice further states as to Cochran's balancing of efficient collection with the legitimate concerns of taxpayers that

> The taxpayers' concerns about the proposed collection action generally fall within two areas: (1) pending litigation (the interest abatement case) and (2) a viable collection alternative in the form of their $32,000 offer in compromise.

> The Settlement Officer has balanced the taxpayers' first area of concern by confirming that the taxpayers' interest abatement case has been decided in Tax Court,

> with the decision being that the taxpayers have conceded the interest abatement issue for the years 1981, 1982, 1983, 1984, 1985, and 1986.
>
> With respect to the taxpayers' second area of concern, the Settlement Officer has evaluated the taxpayers' $32,000 offer to compromise the underlying liabilities as a collection alternative to the proposed levy action. Based on that evaluation, the taxpayers' offer of $32,000 could not be recommended for acceptance, and therefore cannot be considered as a collection alternative.
>
> In all other respects, the proposed levy action regarding the taxpayers represents the only efficient means for collection of the liability at issue in this case.

The notice states that petitioners have neither offered an argument nor cited any authority to permit Appeals to deviate from the provisions of the IRM.

As to petitioners' claim at the hearing for an interest abatement, Cochran ascertained that petitioners had filed the case in this Court seeking an abatement of interest upon section 6404(e) for the same years at issue here. She also ascertained that the parties to that case had on February 9, 2005, filed with this Court a stipulated decision through which petitioners conceded that they were not entitled to their requested interest abatement. Cochran determined that petitioners were not entitled in this case to their claim for an abatement of interest, either under section 6404(e) or as part of an offer-in-compromise.

OPINION

This case is one in a long list of cases brought in this Court involving respondent's proposal to levy on the assets of a partner in a Hoyt partnership to collect Federal income taxes attributable to the partner's participation in the partnership. Petitioners argue that Appeals was required to let them pay $32,000 to compromise what they estimate is their approximately $400,000 Federal income tax liability for 1981 through 1998. Where an underlying tax liability is not at issue in a case invoking our jurisdiction under section 6330(d), we review the determination of Appeals for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000). We reject the determination of Appeals only if the determination was arbitrary, capricious, or without sound basis in fact or law. See Cox v. Commissioner, 126 T.C. 237, 255 (2006); Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005).

Where, as here, we decide the propriety of Appeals's rejection of an offer-in-compromise, we review the reasoning underlying that rejection to decide whether the rejection was arbitrary, capricious, or without sound basis in fact or law. We do not substitute our judgment for that of Appeals, and we do not decide independently the amount that we believe would be an acceptable offer-in-compromise. See Murphy v. Commissioner, supra at 320; see also Fowler v. Commissioner, T.C. Memo.

2004-163; <u>Fargo v. Commissioner</u>, T.C. Memo. 2004-13, affd.
447 F.3d 706 (9th Cir. 2006). Nor do we usually consider
arguments, issues, or other matters raised for the first time at
trial, but we limit ourselves to matter brought to the attention
of Appeals. See <u>Murphy v. Commissioner</u>, <u>supra</u> at 308; <u>Magana v.
Commissioner</u>, 118 T.C. 488, 493 (2002). "[E]vidence that * * *
[a taxpayer] might have presented at the section 6330 hearing
(but chose not to) is not admissible in a trial conducted
pursuant to section 6330(d)(1) because it is not relevant to the
question of whether the Appeals officer abused her discretion."
<u>Murphy v. Commissioner</u>, <u>supra</u> at 315.[10]

Section 6330(c)(2)(A)(iii) allows a taxpayer to offer to
compromise a Federal tax debt as a collection alternative to a
proposed levy. Section 7122(c) authorizes the Commissioner to

---

[10] In <u>Murphy v. Commissioner</u>, 125 T.C. 301 (2005), the Court
declined to include in the record external evidence relating to
facts not presented to Appeals. The Court distinguished
<u>Robinette v. Commissioner</u>, 123 T.C. 85 (2004), revd. 439 F.3d 455
(8th Cir. 2006), and held that the external evidence was
inadmissible in that it was not relevant to the issue of whether
Appeals abused its discretion. In a memorandum that petitioners
filed with the Court on April 13, 2006, pursuant to an order of
the Court directing petitioners to explain the relevancy of any
external evidence that they desired to include in the record of
this case, petitioners made no claim that they had offered any of
the external evidence to Cochran. Instead, as we read
petitioners' memorandum in the light of the record as a whole,
petitioners wanted to include the external evidence in the record
of this case to prove that Cochran abused her discretion by not
considering facts and documents that they had consciously decided
not to give to her. Consistent with <u>Murphy v. Commissioner</u>,
<u>supra</u>, we sustained respondent's relevancy objections to the
external evidence.

prescribe guidelines to determine when a taxpayer's offer-in-compromise should be accepted. The applicable regulations, section 301.7122-1(b), Proced. & Admin. Regs., list three grounds on which the Commissioner may accept an offer-in-compromise of a Federal tax debt. These grounds are "Doubt as to liability", "Doubt as to collectibility", and to "Promote effective tax administration". Sec. 301.7122-1(b)(1), (2), and (3), Proced. & Admin. Regs.

Petitioners argue that respondent was required to compromise their tax liability on the bases of the latter two grounds. As to the first of these grounds, the Commissioner may compromise a tax liability due to doubt as to collectibility where the taxpayer's assets and income are less than the full amount of the assessed liability. See sec. 301.7122-1(b)(2), Proced. & Admin. Regs. In such a case, the Commissioner also may accept an offer-in-compromise due to doubt as to collectibility with special circumstances; i.e., the Commissioner may accept an offer of less than the total reasonable collection potential of the case. See Rev. Proc. 2003-71, sec. 4.02, 2003-2 C.B. 517. As to the second ground, the Commissioner may compromise a tax liability to promote effective tax administration when collection of the full liability will create economic hardship and the compromise would not undermine compliance with the tax laws by taxpayers in general. See sec. 301.7122-1(b)(3)(i), (iii), Proced. & Admin.

Regs.  If a taxpayer does not qualify for the just stated effective tax administration compromise on grounds of economic hardship, and does not qualify for an offer-in-compromise due to doubt as to either liability or collectibility, the regulations also allow the Commissioner to compromise a tax liability to promote effective tax administration when the taxpayer identifies compelling considerations of public policy or equity.  See sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

Petitioners made their offer-in-compromise due to doubt as to collectibility with special circumstances and to promote effective tax administration.  Petitioners reported on their Form 433-A that their reasonable collection potential was $140,462 (i.e., their assets' total reported current value of $144,322 - their $3,860 Buick LeSabre which was fully encumbered by debt). Cochran determined petitioners' reasonable collection potential by way of alternative calculations.  Under each of those calculations, petitioners cannot fully pay their approximately $400,000 tax liability and thus do not qualify for an offer-in-compromise to promote effective tax administration.  See sec. 301.7122-1(b)(3), Proced. & Admin. Regs.; cf. Fargo v. Commissioner, 447 F.3d 706 (9th Cir. 2006) (taxpayers made an offer-in-compromise to promote effective tax administration where they had sufficient assets to pay their tax liability in full). As to petitioners' offer-in-compromise due to doubt as to

collectibility with special circumstances, the Commissioner evaluates such an offer by applying the same factors (economic hardship or considerations of public policy or equity) as in the case of an offer-in-compromise to promote effective tax administration. See IRM sec. 5.8.11.2.1 and .2. In accordance with the Commissioner's guidelines, an offer-in-compromise due to doubt as to collectibility with special circumstances should not be accepted even when economic hardship or considerations of public policy or equity circumstances are identified, if the taxpayer does not offer an acceptable amount. See IRM sec. 5.8.11.2.1.11 and .12.

Cochran considered all of the evidence submitted to her by petitioners and applied the guidelines for evaluating an offer-in-compromise due to doubt as to collectibility with special circumstances or to promote effective tax administration. As to the former, Cochran determined that petitioners' offer was unacceptable because they were able to pay more than the $32,000 that they offered to compromise their tax liability. As to the latter, Cochran determined that petitioners' offer did not qualify as an offer-in-compromise to promote effective tax administration because petitioners were unable to pay their liability in full. Cochran's determination to reject petitioners' offer-in-compromise was not arbitrary, capricious, or without a sound basis in fact or law, and it was not abusive

or unfair to petitioners. Cochran's determination was based on a reasonable application of the guidelines, which we decline to second-guess. See Speltz v. Commissioner, 124 T.C. 165 (2005), affd. ___ F.3d ___ (8th Cir. 2006).

Petitioners make eight arguments in advocating a contrary result. First, petitioners argue that the Court lacks jurisdiction to review the rejection of their offer-in-compromise. Petitioners allege that Hoyt had a conflict of interest that prevented him from extending the periods of limitation for the partnerships in which petitioners were partners. Petitioners conclude that any consents signed by Hoyt to extend the periods of limitation were invalid, which in turn means that the Court lacks jurisdiction because the applicable periods of limitation have otherwise expired.

Petitioners' challenge to this Court's jurisdiction is groundless, frivolous, and unavailing. It is well settled that the expiration of the period of limitation is an affirmative defense and not a factor of this Court's jurisdiction. See Day v. McDonough, 547 U.S. ___, 126 S. Ct. 1675, 1681 (2006) ("A statute of limitations defense * * * is not 'jurisdictional'"); Kontrick v. Ryan, 540 U.S. 443, 458 (2004) ("Time bars * * * generally must be raised in an answer or responsive pleading."); see also Davenport Recycling Associates v. Commissioner, 220 F.3d 1255, 1259 (11th Cir. 2000), affg. T.C. Memo. 1998-347; Chimblo

v. Commissioner, 177 F.3d 119, 125 (2d Cir. 1999), affg. T.C. Memo. 1997-535; Columbia Bldg., Ltd. v. Commissioner, 98 T.C. 607, 611 (1992); Robinson v. Commissioner, 57 T.C. 735, 737 (1972). Where, as here, the claim of a time bar relates to items of a partnership, the claim must be made in the partnership proceeding and may not be considered at a proceeding involving the personal income tax liability of one or more of the partners of the partnership. See Davenport Recycling Associates v. Commissioner, supra at 1259-1260; Chimblo v. Commissioner, supra at 125; Kaplan v. United States, 133 F.3d 469, 473 (7th Cir. 1998).

Second, petitioners argue that Cochran's rejection of their offer-in-compromise conflicts with the congressional committee reports underlying the enactment of section 7122. According to petitioners, their case is a "longstanding" case, and those reports require that respondent resolve such cases by forgiving interest and penalties that otherwise apply. We disagree with petitioners' reading and application of the legislative history underlying section 7122. Petitioners' argument on this point is essentially the same argument that was considered and rejected by the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, 447 F.3d at 711-712. We do likewise here for the same reasons stated in that opinion. We add that petitioners' counsel participated in the appeal in Fargo v. Commissioner, 447

F.3d 706 (9th Cir. 2006), as counsel for the amici.  While
petitioners in their brief suggest that the Court of Appeals for
the Ninth Circuit knowingly wrote its opinion in Fargo in such a
way as to distinguish that case from the cases of counsel's
similarly situated clients (e.g., petitioners), and otherwise to
allow those clients to receive an abatement of their liability
attributable to partnerships such as those here, we do not read
the opinion of the Court of Appeals for the Ninth Circuit in
Fargo to support that conclusion.

Third, petitioners argue that Cochran inadequately
considered their unique facts and circumstances.  We disagree.
Cochran reviewed and considered all information given to her by
petitioners.  On the basis of the facts and circumstances of
petitioners' case as they had been presented to her, Cochran
determined that petitioners' offer did not meet the applicable
guidelines for acceptance of an offer-in-compromise due to doubt
as to collectibility with special circumstances or to promote
effective tax administration.  We find no abuse of discretion in
that determination.

Petitioners take exception to the fact that the notice of
determination does not state specifically that petitioners are in
their sixties and retired, speculating from this fact that
Cochran did not adequately take into account their special
circumstances.  Petitioners also assert that Cochran failed to

take their special circumstances into account because, they assert, she did not reflect that they both have "significant medical conditions" and that their medical expenses will increase in later years.  Petitioners' assertions and speculation are without merit.  We do not believe that Appeals must specifically list in the notice of determination every single fact that it considered in arriving at the determination.  Nor do we find that Cochran inadequately considered the information actually given to her by petitioners.  In fact, Cochran computed petitioners' future income potential by using the same income figures that petitioners reported on their Form 433-A, and the reported items of income were all types of retirement income that could reasonably be expected to remain constant over the next 48 months.  Cochran's calculations also reflected her generous assessment that:  (1) In the 48-month period, petitioners would pay $1,087 of medical expenses monthly, although she believed that amount to be greater than average, (2) petitioners had overstated the values of their vehicles and were entitled to a 20-percent reduction in those values, although petitioners had reported their vehicles at their trade-in values, (3) petitioners had properly valued their home and other real property at their assessed values, although appraisals or current market value may be higher, and (4) petitioners may be allowed to claim their $500 "other expense" as a monthly expense, although the nature of the

expense had not been identified. Although petitioners believe that Cochran's calculation should have reflected increased medical expenses in the 48-month period and thereafter, we do not agree. We are unable to find that petitioners ever told Cochran with specificity that they would have to pay a greater amount of unreimbursed medical expenses in the future. Under the facts at hand, we consider it reasonable for Cochran to have used petitioners' $1,087 monthly estimate, particularly when the estimate, if annualized, exceeded petitioners' prior year's actual medical expenses. See Fargo v. Commissioner, 447 F.3d at 710 (it is not an abuse of discretion to disregard claimed medical expenses that are speculative or not related to the taxpayer).

Fourth, petitioners argue that Cochran did not adequately take into account the economic hardship they claim they will suffer by having to pay more than $32,000 as to their tax liability. We disagree. Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., states that economic hardship occurs when a taxpayer is "unable to pay his or her reasonable basic living expenses." Section 301.7122-1(c)(3), Proced. & Admin. Regs., sets forth factors to consider in evaluating whether collection of a tax liability would cause economic hardship, as well as some illustrative examples. One of the examples involves a taxpayer who provides fulltime care to a dependent child with a serious

longterm illness.  A second example involves a taxpayer who would lack adequate means to pay his basic living expenses were his only asset to be liquidated.  A third example involves a disabled taxpayer with a fixed income and a modest home specially equipped to accommodate his disability, and who is unable to borrow against his home because of his disability.  See sec. 301.7122-1(c)(3)(iii), Examples (1), (2), and (3), Proced. & Admin. Regs.  None of these examples bears any resemblance to this case but instead "describe more dire circumstances".  Speltz v. Commissioner, ___ F.3d at ___.

Nor have petitioners articulated with any specificity the purported economic hardship they will suffer if they are not allowed to compromise their liability for $32,000.  While petitioners claim generally that the sale of their residence would create an economic hardship in that they would be unable to afford paying either rent or a mortgage, this claim is vague, speculative, undocumented, and unavailing.[11]  Nor are we persuaded by petitioners' suggestion that their health is an "economic hardship" by virtue of section 301.7122-1(c)(3)(i)(A), Proced. & Admin. Regs.  In this regard, petitioners have given us

---

[11] We note that our opinion here does not necessarily mean that respondent may in fact levy on petitioners' residence in payment of their tax debt.  Pursuant to sec. 6334(a)(13)(B) and (e), a taxpayer's principal residence is exempt from levy absent the written approval of a U.S. District Court Judge or Magistrate.  See also sec. 301.6334-1(d), Proced. & Admin. Regs.

no reason to disagree with the essence of Cochran's determination that petitioners' health does not render them "incapable of earning a living", nor have we reason to conclude that petitioners' "financial resources will be exhausted providing for care and support during the course of the condition".[12]  Id.

We also are mindful that any decision by Cochran to accept petitioners' offer-in-compromise due to doubt of collectibility with special circumstances must be viewed against the backdrop of section 301.7122-1(b)(3)(iii), Proced. & Admin. Regs.  That section requires that Cochran deny petitioners' offer if her acceptance of it would undermine voluntary compliance with tax laws by taxpayers in general.  Thus, even if we were to assume arguendo that petitioners would suffer economic hardship, a finding that we emphasize we decline to make, we would not find that Cochran's rejection of petitioners' offer was an abuse of discretion because we conclude below (in our discussion of petitioners' fifth argument) that her acceptance of that offer would have undermined voluntary compliance with tax laws by

---

[12] We also note that the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, 447 F.3d 706, 710 (9th Cir. 2006), affg. T.C. Memo. 2004-13, dismissed a similar claim of economic hardship advanced by the taxpayers there.  Although those taxpayers had more assets than petitioners, the court emphasized that a finding of economic hardship is within the discretion of Appeals.  Under the facts at hand, we find no abuse of discretion in Cochran's determination that petitioners would suffer no economic hardship were they required to pay more than their $32,000 offer.

taxpayers in general. The prospect that acceptance of an offer will undermine compliance with the tax laws militates against its acceptance whether the offer is predicated on promotion of effective tax administration or on doubt as to collectibility with special circumstances. See Rev. Proc. 2003-71, 2003-2 C.B. 517; see also IRM sec. 5.8.11.2.2.

Fifth, petitioners argue that public policy demands that their offer-in-compromise be accepted because they were victims of fraud. We disagree. While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two illustrative examples. See sec. 301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs. The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years. The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions. Neither example bears any resemblance to this case. Accord Speltz v. Commissioner, supra. Unlike the exceptional circumstances exemplified in the regulations, petitioners' situation is neither unique nor exceptional in that their situation mirrors numerous taxpayers who claimed tax shelter deductions in the 1980s and 1990s, obtained the tax advantages, promptly forgot about their

"investment", and now realize that paying their taxes will require a change of lifestyle.[13]

We also agree with a claim by respondent that compromising petitioners' case on grounds of public policy or equity would not promote effective tax administration. While petitioners portray themselves as victims of Hoyt's alleged fraud and respondent's alleged delay in dealing with Hoyt, they take no responsibility for their tax predicament. We cannot agree that acceptance by respondent of petitioners' $32,000 offer to satisfy their approximately $400,000 tax liability would enhance voluntary compliance by other taxpayers. A compromise on that basis would place the Government in the unenviable role of an insurer against poor business decisions by taxpayers, reducing the incentive for taxpayers to investigate thoroughly the consequences of transactions into which they enter. It would be particularly inappropriate for the Government to play that role here, where the transaction at issue is participation in a tax shelter.

---

[13] Of course, the examples in the regulations are not meant to be exhaustive, and petitioners have a more sympathetic case than the taxpayers in Fargo v. Commissioner, supra at 714, for whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception". Such considerations, however, have not kept this Court from finding investors in Hoyt's shelters to be culpable of negligence, most recently in Keller v. Commissioner, T.C. Memo. 2006-131, nor prevented the Courts of Appeals for the Sixth and Tenth Circuits from affirming our decisions to that effect in Mortensen v. Commissioner, 440 F.3d 375 (6th Cir. 2006), affg. T.C. Memo. 2004-279, and Van Scoten v. Commissioner, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

Reducing the risks of participating in tax shelters would encourage more taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws.[14]

Sixth, petitioners argue that Cochran failed to balance efficient collection with the legitimate concern that collection be no more intrusive than necessary. We disagree. Cochran thoroughly considered this issue on the basis of the information and proposed collection alternative given to her by petitioners. She concluded that "the proposed levy action regarding the taxpayer represents the only efficient means for collection of the liability at issue". While petitioners assert that Cochran did not consider all of their facts and circumstances, "including whether the circumstances of a particular case warrant acceptance of an amount that might not otherwise be acceptable under the Secretary's policies and procedures", sec. 301.7122-1(c)(1), Proced. & Admin. Regs., we find to the contrary. Cochran thoroughly considered petitioners' arguments for accepting their

_____

[14] Nor does the fact that petitioners' case may be "longstanding" overcome the detrimental impact on voluntary compliance that could result from respondent's accepting petitioners' offer-in-compromise. An example in IRM sec. 5.8.11.2.3 implicitly addresses the "longstanding" issue. There, the taxpayer invested in a tax shelter in 1983, thereby incurring tax liabilities for 1981 through 1983. He failed to accept a settlement offer by respondent that would have eliminated a substantial portion of his interest and penalties. Although the example, which is similar to petitioners' case in several respects, would qualify as a longstanding case by petitioners' standards, the offer was not acceptable because accepting it would undermine compliance with the tax laws.

offer-in-compromise, and she rejected the offer only after concluding that petitioners could pay more of their tax liability than the $32,000 they offered. Cf. IRM sec. 5.8.11.2.1.11 ("When [economic] hardship criteria are identified but the taxpayer does not offer an acceptable amount, the offer should not be recommended for acceptance").

Seventh, petitioners argue that Cochran inappropriately failed to consider whether they qualified for an abatement of interest for reasons other than those described in section 6404(e). We disagree. While Cochran declined to accept petitioners' request to reject the proposed levy because of their interest abatement case, given that the interest abatement case had been resolved, we find nothing to suggest that Cochran believed that petitioners' sole remedy for interest abatement in this case rested on the rules of section 6404(e). In fact, regardless of the rules of section 6404(e) and the stipulated decision, Cochran obviously would have abated interest in this case had she agreed to let petitioners compromise their approximately $400,000 liability by paying less than the amount of interest included within that liability.

Eighth, petitioners argue that Cochran erred in not allowing their counsel additional time to submit documents for Cochran's consideration and by not informing petitioners of the contents of the notice of determination before it was issued. We disagree on

both counts.  We do not believe that Cochran abused her discretion by rejecting petitioners' offer-in-compromise simply because she may have established a due date for submission of information.  As a matter of fact, petitioners' counsel by their own admission acknowledge that Cochran had regularly granted counsel's repeated requests for extensions made in part because counsel was mired from their acceptance of many of these cases involving other partners of the Hoyt partnerships.  Nor do we believe that Cochran abused her discretion by rejecting petitioners' offer-in-compromise simply because she may not have discussed with petitioners the contents of the notice of determination (and given them a chance to dispute it) before issuing the notice of determination to them.  Cf. Fargo v. Commissioner, 447 F.3d at 712-713 (holding that Appeals has no duty to negotiate with a taxpayer before rejecting the taxpayer's offer-in-compromise).  We also disagree with petitioners that Cochran had an affirmative duty to attempt unilaterally to find additional facts in support of their case as soon as she came to the conclusion that their offer-in-compromise should be denied.

We hold that Appeals did not abuse its discretion in rejecting petitioners' $32,000 offer-in-compromise.  In so holding, we express no opinion as to the amount of any compromise that petitioners could or should be required to pay, or that respondent is required to accept.  The only issue before us is

whether Appeals abused its discretion in refusing to accept petitioners' specific offer-in-compromise in the amount of $32,000.  See <u>Speltz v. Commissioner</u>, 124 T.C. at 179-180.  We have considered all arguments made by petitioners for a contrary holding and have found those arguments not discussed herein to be without merit.

<u>An appropriate order will be issued</u>.