T.C. Memo. 2007-29

UNITED STATES TAX COURT

BOBBIE E. JOHNSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20775-04L.               Filed February 7, 2007.

<u>Terri A. Merriam</u>, for petitioner.

<u>Gregory M. Hahn</u> and <u>Thomas N. Tomashek</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Petitioner filed a petition with this Court
in response to a Notice of Determination Concerning Collection
Action(s) Under Section 6330 (notice of determination) for 1981
through 1986, 1988, and 1992.[1]  Pursuant to section 6330(d),

_____

[1]  Unless otherwise indicated, all section references are to
(continued...)

petitioner seeks review of respondent's determination.  The issue for decision is whether respondent abused his discretion in sustaining the proposed collection action.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The first, second, third, fourth, and fifth stipulations of fact and the attached exhibits are incorporated herein by this reference.[3]

---

[1](...continued)
the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

[2]  Petitioner also disputes respondent's determination that he is liable for the increased rate of interest on tax-motivated transactions under sec. 6621(c).  As to this dispute, the parties filed a stipulation to be bound by the Court's determination in Ertz v. Commissioner, T.C. Memo. 2007-15, which involves a similar issue.

[3]  Respondent reserved relevancy objections to many of the exhibits attached to the stipulations of fact.  Fed. R. Evid. 402 provides the general rule that all relevant evidence is admissible, while evidence which is not relevant is not admissible.  Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." While the relevance of some exhibits is certainly limited, we find that the exhibits meet the threshold definition of relevant evidence and are admissible.  The Court will give the exhibits only such consideration as is warranted by their pertinence to the Court's analysis of petitioner's case.

Respondent also objected to many of the exhibits on the basis of hearsay.  Even if we were to receive those exhibits into evidence, they would have no impact on our findings of fact or on the outcome of this case.

Petitioner resided in Lodi, California, when he filed his petition. At the time of trial, petitioner was 76 years old, his wife (Mrs. Johnson) was 71 years old, and they had been married for more than 50 years. Petitioner and Mrs. Johnson are retired.

In 1984, petitioner became a partner in Durham Genetic Engineering, Ltd. 1984-4 (DGE 84-4) and Shorthorn Genetic Engineering, Ltd. 1984-4 (SGE 84-4), cattle breeding partnerships organized and operated by Walter J. Hoyt III (Hoyt).[4]

From about 1971 through 1998, Hoyt organized, promoted, and operated more than 100 cattle breeding partnerships. Hoyt also organized, promoted, and operated sheep breeding partnerships. From 1983 to his subsequent removal by the Tax Court in 2000 through 2003, Hoyt was the tax matters partner of each Hoyt partnership. From approximately 1980 through 1997, Hoyt was a licensed enrolled agent, and as such, he represented many of the Hoyt partners before the Internal Revenue Service (IRS). In

---

[4] Petitioner was also a partner in other Hoyt-related partnerships identified as TBS 87-1, TBS JV, HS Truck, and TBS 1989-3. The details of these partnerships are not in the record. Though unclear, it appears that all adjustments made to petitioner's income tax liability for 1981-86, 1988, and 1992 arose from his involvement in DGE 84-4 and SGE 84-4 only.

1998, Hoyt's enrolled agent status was revoked. Hoyt was convicted of various criminal charges in 2000.[5]

Beginning in 1984 until at least 1992, petitioner claimed losses and credits on his Federal income tax returns arising from his involvement in the Hoyt partnerships. Petitioner also carried back unused investment credits to 1981, 1982, and 1983. As a result of these losses and credits, petitioner reported overpayments of tax for 1981 through 1986, 1988, and 1992, and received refunds in the amounts claimed.

---

[5] Petitioner asks the Court to take judicial notice of certain "facts" in other Hoyt-related cases and apply judicial estoppel to "facts respondent has asserted in previous [Hoyt-related] litigation". We do neither.

A judicially noticeable fact is one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Petitioner is not asking the Court to take judicial notice of facts that are not subject to reasonable dispute. Instead, petitioner is asking the Court to take judicial notice of the truth of assertions made by taxpayers and the Commissioner in other Hoyt-related cases. Such assertions are not the proper subject of judicial notice.

The doctrine of judicial estoppel prevents a party from asserting in a legal proceeding a claim that is inconsistent with a position successfully taken by that party in a previous proceeding. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Among the requirements for judicial estoppel to be invoked, a party's current litigating position must be "clearly inconsistent" with a prior litigating position. Id. at 750-751. Petitioner has failed to identify any clear inconsistencies between respondent's current position and his position in any previous litigation.

Respondent issued Notices of final partnership administrative adjustments (FPAAs) to DGE 84-4 for at least its 1986 taxable year and to SGE 84-4 for its 1984 through 1986 taxable years.[6]  After completion of the partnership-level proceedings, respondent determined deficiencies in petitioner's income tax for his 1981 through 1986 tax years.[7]

On March 7, 2002, respondent issued petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice).  The final notice included petitioner's outstanding tax liabilities for 1981 through 1986, 1988 and 1992.

On March 17, 2002, petitioner submitted a Form 12153, Request for a Collection Due Process Hearing.  Petitioner argued that the proposed levies were inappropriate and that an offer-in-compromise should be accepted.

Petitioner's case was assigned to Settlement Officer Linda Cochran (Ms. Cochran).  Ms. Cochran scheduled a telephone section 6330 hearing for April 13, 2004.  On March 25, 2004, petitioner's representative, Terri A. Merriam (Ms. Merriam), requested additional time to submit information to be considered during the

---

[6]  The FPAAs and other information specific to DGE 84-4's and SGE 84-4's  partnership-level proceedings are not in the record.

[7]  It does not appear that the changes made to petitioner's income tax for 1988 and 1992 were made pursuant to the orders and decisions.  The details regarding petitioner's 1988 and 1992 taxable years are not in the record.

hearing.  Ms. Cochran extended petitioner's deadline for producing information to June 1, 2004.

On May 21, 2004, petitioner submitted to Ms. Cochran a letter with 42 exhibits.  On May 29, 2004, petitioner submitted to Ms. Cochran a Form 656, Offer in Compromise, a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, one letter explaining the offer amount, and three letters setting out in detail petitioner's position regarding the offer-in-compromise.  Petitioner's letters included several exhibits not provided with the May 21, 2004, letter.

The Form 656 indicated that petitioner was seeking an offer-in-compromise based on either doubt as to collectibility with special circumstances or effective tax administration. Petitioner offered to pay $120,500 to compromise his outstanding tax liabilities for 1981 through 1996.  Petitioner estimated that his outstanding tax liabilities for 1981 through 1986, 1988, and 1992 only were $480,034.

On the Form 433-A, petitioner listed the following assets:

| Asset | Current Balance/Value | Loan Balance |
|---|---|---|
| Checking account | $452 | n/a |
| Money market account | 2,738 | n/a |
| Stocks | 30,745 | -0- |
| Retirement accounts | 108,882 | -0- |
| 2003 Ford Crown Victoria | 12,210 | -0- |
| 2002 Chevrolet Cavalier | 4,615 | -0- |
| 1988 Pace Arrow motor home | 6,000 | -0- |
| House | 81,325 | $30,119 |
| Pasture land | 26,325 | -0- |
| Total | 273,292 | 30,119 |

The reported value of the retirement accounts included only 70 percent of their then-current value.

Petitioner reported gross monthly income of $3,140, representing petitioner's pension/Social Security income of $2,199, Mrs. Johnson's pension/Social Security income of $725, net rental income of $155, and interest income of $61. Petitioner also reported the following monthly living expenses:

| Expense item | Monthly expense |
|---|---|
| Food, clothing, misc. | $904 |
| Housing and utilities | 1,254 |
| Transportation | 375 |
| Health care | 322 |
| Taxes (income and FICA) | 408 |
| Life insurance | 14 |
| Attorney's fees | 414 |
| Total | 3,691 |

In the letter explaining the offer amount, petitioner stated that he was offering $120,500:

> to be paid by withdrawing the funds from the retirement account and from other cash assets. This offer is for all Hoyt related years to be paid in one lump sum payment. The remainder of the retirement funds and the equity in the home is needed for necessary living expenses. * * * This offer amount fully pays the majority of estimated tax liability, but does not include interest.

The letter also included "medical and retirement considerations" and a "retirement analysis". Petitioner's medical and retirement considerations included: (1) Petitioner and Mrs. Johnson are retired; (2) petitioner suffers from arthritis and must take medications and undergo therapy for his condition; (3) Mrs. Johnson suffers from high blood pressure and must take medications for her condition; and (4) due to their age and health, "it is certain that they will have continuing and substantial medical expenses." The retirement analysis outlined

the likelihood of increased housing and medical costs as petitioner and Mrs. Johnson aged.

In the remaining three letters, petitioner alleged that he was a victim of Hoyt's fraud and asserted various arguments regarding the appropriateness of an offer-in-compromise.

On September 29, 2004, respondent issued petitioner a notice of determination. In evaluating petitioner's offer-in-compromise, respondent made the following changes to the values of assets reported by petitioner on the Form 433-A: (1) Determined that the house was worth $250,000 instead of $81,325; (2) determined that the pasture land was worth $52,651 instead of $26,325; (3) included the full value of petitioner's and Mrs. Johnson's retirement accounts instead of their 70-percent value; and (4) included the quick-sale value of the vehicles and the motor home. Respondent determined that petitioner had total net realizable equity in assets of $428,066.

Respondent accepted petitioner's pension and interest income as reported but increased the net rental income from $155 to $165 based on petitioner's 2003 Federal income tax return. Respondent accepted the majority of petitioner's monthly expenses, but made the following changes: (1) Reduced the foods, clothing, etc. expense from $904 to $801 to reflect the national standard; (2) reduced the housing expense from $1,254 to $885 to reflect actual documented costs; and (3) disallowed the taxes expense because

petitioner paid no Federal income tax in 2003 and provided no documentation regarding State taxes. Regarding the possible future increases in expenses outlined in petitioner's letter explaining the offer amount, respondent determined that these were "general projections from the taxpayers' representative and may never, in fact, be incurred" and thus did not take them into account.

After making adjustments to petitioner's monthly expenses, respondent determined that $28,815 was collectible from petitioner's future income.[8] Respondent concluded that petitioner had the ability to pay $456,881.

Because petitioner had the ability to pay substantially more than the amount offered, respondent rejected his offer-in-compromise based on doubt as to collectibility with special circumstances. Respondent also rejected petitioner's effective tax administration offer-in-compromise because he did not have the ability to pay his outstanding tax liability in full.

Respondent concluded that petitioner did not offer an acceptable collection alternative, that all requirements of law and administrative procedure had been met, and that respondent could proceed with the proposed collection action.

---

[8] Respondent determined that petitioner had monthly disposable income of $339 and multiplied this by 85, the number of months remaining on the collection statute.

In response to the notice of determination, petitioner filed a petition with this Court on November 1, 2004.

OPINION

Section 7122(a) provides that "The Secretary may compromise any civil * * * case arising under the internal revenue laws". Whether to accept an offer-in-compromise is left to the Secretary's discretion. Fargo v. Commissioner, 447 F.3d 706, 712 (9th Cir. 2006), affg. T.C. Memo. 2004-13; sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

The regulations under section 7122(a) set forth three grounds for the compromise of a tax liability: (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Doubt as to liability is not at issue in this case.[9]

Petitioner proposed an offer-in-compromise based alternatively on doubt as to collectibility with special circumstances or effective tax administration. Petitioner offered to pay $120,500 to compromise his outstanding tax liabilities for 1981 through 1996, which totaled at least

_____

[9] While petitioner contests his liability for sec. 6621(c) interest, see supra note 2, he did not raise doubt as to liability as a basis for his offer-in-compromise.

$480,034.[10]  Respondent determined that petitioner's reasonable

collection potential was $456,881 and that his offer-in-

compromise did not meet the criteria for an offer-in-compromise

based on either doubt as to collectibility with special

circumstances or effective tax administration.

Because the underlying tax liability is not at issue, our

review under section 6330 is for abuse of discretion.  See Sego

v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner,

114 T.C. 176, 182 (2000).  This standard does not ask us to

decide whether in our own opinion petitioner's offer-in-

compromise should have been accepted, but whether respondent's

rejection of the offer-in-compromise was arbitrary, capricious,

or without sound basis in fact or law.  Woodral v. Commissioner,

112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-

166; Fowler v. Commissioner, T.C. Memo. 2004-163.

A.  Effective Tax Administration

If the taxpayer has the ability to pay his tax liability in

full, the Secretary may compromise the tax liability on the

ground of effective tax administration when:  (1) Collection of

the full liability will create economic hardship; or (2)

exceptional circumstances exist such that collection of the full

---

[10]  Petitioner estimated that his total outstanding tax
liabilities for 1981-86, 1988, and 1992 were $480,034.  This
amount does not include his outstanding tax liabilities for 1987,
1989-91, and 1993-96.  Thus, it appears that petitioner is
actually seeking to compromise an amount greater than $480,034.

liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner; and (3) compromise of the liability would not undermine compliance by taxpayers with the tax laws. Sec. 301.7122-1(b)(3), Proced. & Admin. Regs.

Ms. Cochran determined that petitioner could not afford to pay his outstanding tax liability in full and therefore did not qualify for an effective tax administration offer-in-compromise. Petitioner does not argue that he has the ability to pay his tax liability in full. Because he did not have the ability to pay his outstanding tax liability in full, petitioner does not qualify for an effective tax administration offer-in-compromise. See Barnes v. Commissioner, T.C. Memo. 2006-150; sec. 301.7122-1(b)(3), Proced. & Admin. Regs. Ms. Cochran's determination that petitioner did not qualify for an effective tax administration offer-in-compromise was not arbitrary or capricious and was not an abuse of discretion.

B.  Doubt as to Collectibility With Special Circumstances

The Secretary may compromise a tax liability based on doubt as to collectibility where the taxpayer's assets and income are less than the full amount of the assessed liability. Sec. 301.7122-1(b)(2), Proced. & Admin. Regs. Generally, under the Commissioner's administrative pronouncements, an offer-in-compromise based on doubt as to collectibility will be acceptable

only if it reflects the taxpayer's reasonable collection potential.  Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.  In some cases, the Commissioner will accept an offer of less than the reasonable collection potential if there are "special circumstances".  Id.  Special circumstances are:  (1) Circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the reasonable collection potential; or (2) circumstances justifying acceptance of an amount less than the reasonable collection potential of the case based on public policy or equity considerations.  See Internal Revenue Manual (IRM) sec. 5.8.4.3(4).  However, in accordance with the Commissioner's guidelines, an offer-in-compromise based on doubt as to collectibility with special circumstances should not be accepted, even when economic hardship or considerations of public policy or equity circumstances are identified, if the taxpayer does not offer an acceptable amount.  See IRM sec. 5.8.11.2.1(11) and .2(12).

Petitioner argues that his offer-in-compromise based on doubt as to collectibility with special circumstances should have been accepted because collection of an amount equal to his reasonable collection potential would create an economic hardship and public policy and equity considerations justify acceptance of an amount less than his reasonable collection potential.

1.  Economic Hardship

Petitioner asserts that Ms. Cochran abused her discretion by rejecting his offer-in-compromise because "There is no indication that SO Cochran gave any substantive consideration to Petitioner's demonstrated special circumstances or to the fact that he would experience a hardship if required to make a full payment."  In support of this assertion, petitioner argues:  (1) Ms. Cochran failed to discuss petitioner's special circumstances in the notice of determination; and (2) Ms. Cochran erroneously determined petitioner's reasonable collection potential income and failed to take into account his future expenses.

Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., states that economic hardship occurs when a taxpayer is "unable to pay his or her reasonable basic living expenses."  Section 301.7122-1(c)(3), Proced. & Admin. Regs., sets forth factors to consider in evaluating whether collection of a tax liability would cause economic hardship, as well as some examples.  One of the examples involves a taxpayer who provides full-time care to a dependent child with a serious long-term illness.  A second example involves a taxpayer who would lack adequate means to pay his basic living expenses, were his only asset to be liquidated.  A third example involves a disabled taxpayer who has a fixed income and a modest home specially equipped to accommodate his disability, and who is unable to borrow against his home because

of his disability. See sec. 301.7122-1(c)(3)(iii), Examples (1), (2), and (3), Proced. & Admin. Regs. None of these examples bears any resemblance to this case, but instead they "describe more dire circumstances". Speltz v. Commissioner, 454 F.3d 782, 786 (8th Cir. 2006), affg. 124 T.C. 165 (2005); see also Barnes v. Commissioner, supra. Nevertheless, we address petitioner's arguments.

a. Discussion of Special Circumstances in the Notice of Determination

Petitioner argues that Ms. Cochran failed "to follow proper procedure by discussing [petitioner's and Mrs. Johnson's] special circumstances * * * what equity was considered in relation to [their] special circumstances, and how the special circumstances affected her determination of [petitioner's] ability to pay." Petitioner infers that, because the special circumstances were not discussed in detail in the notice of determination, Ms. Cochran failed to adequately take the circumstances into consideration.

We do not believe that Appeals must specifically list in the notice of determination every single fact that it considered in arriving at the determination. See Barnes v. Commissioner, supra. This is especially true in a case such as this, where petitioner provided Ms. Cochran with multiple letters and hundreds of pages of exhibits. As discussed below, Ms. Cochran considered all of the arguments and information presented to her.

Given the amount of information, it would be unreasonable to put the burden on Ms. Cochran to specifically address in the notice of determination every single asserted fact, circumstance, and argument presented. The fact that all of the information was not specifically addressed in the notice of determination was not an abuse of discretion.

    b.  <u>Petitioner's Reasonable Collection Potential</u>

Petitioner asserts that Ms. Cochran erroneously determined his reasonable collection potential by: (1) Considering 85 months of petitioner's future income instead of 48 months; (2) failing to adequately consider petitioner's and Mrs. Johnson's age, health, retirement status, medical costs, and the likelihood of future increases in medical and housing costs; and (3) erroneously redetermining the value of petitioner's assets and the amount of his expenses. Petitioner's arguments are not persuasive.

Section 5.8.5.5 of the IRM provides that, when a taxpayer makes a cash offer to compromise an outstanding tax liability, only 48 months of future income should be considered. Petitioner made a cash offer, but Ms. Cochran used 85 months of future income. At trial, Ms. Cochran acknowledged that she should have used only 48 months of future income. Ms. Cochran recomputed petitioner's reasonable collection potential using 48 months and determined that it was $442,338, instead of $456,881, as

reflected in the notice of determination. Ms. Cochran testified that the change would not have had an effect on her final determination because, using either calculation, petitioner's reasonable collection potential was much greater than his offer amount ($120,500). We find that Ms. Cochran's error did not amount to an abuse of discretion because, even when the error is corrected, petitioner's reasonable collection potential of $442,338 far exceeds his offer amount of $120,500.

With regard to age, health, and retirement status, petitioner's argument is not supported by the record. On his Form 433-A, petitioner reported monthly medical expenses of $322. In his letter describing the offer amount, petitioner represented that he and Mrs. Johnson were retired.

Ms. Cochran accepted petitioner's monthly medical expenses without change. Because petitioner and Mrs. Johnson were retired, Ms. Cochran considered only pension income and other income not contingent upon employment. Given that Ms. Cochran accepted petitioner's medical expenses as reported and considered future income consistent with the retirement considerations listed by petitioner, we reject petitioner's assertion that Ms. Cochran failed to consider his and Mrs. Johnson's age, health, retirement status, and current medical costs.

Petitioner's argument is also unavailing with regard to the likelihood of future increases in medical and housing costs.

Petitioner did not inform Ms. Cochran with any specificity that he would have to pay a greater amount of unreimbursed medical expenses in the future, or that his housing expenses would increase.  Instead, he made general assertions about the increase of medical costs as people age and about the need for some seniors to seek in-home care or nursing home care or to make their houses handicapped accessible.

As reflected in the notice of determination, Ms. Cochran took into consideration the information petitioner presented, but concluded that "these possible future expenses are general projections from the taxpayer's representative and may never, in fact, be incurred.  The present offer, therefore, must be considered within the framework of present facts."  Given the information presented to her, it was not arbitrary or capricious for Ms. Cochran to ignore these speculative future costs in making her final determination.

Petitioner also raises challenges to various other determinations made by Ms. Cochran, including:  (1) The determination that the house was worth more than what petitioner reported; (2) the determination that the pasture land was worth more than what petitioner reported; and (3) the reduction of his food, clothing, etc., housing, and tax expenses.  We need not discuss in detail these and other minor disputes raised by petitioner.  Even assuming arguendo that petitioner's income,

expenses, and value of assets should have been accepted as reported, we would not find that Ms. Cochran abused her discretion in rejecting petitioner's offer-in-compromise. Ms. Cochran testified that, had she accepted the income, expenses, and value of assets as reported, petitioner's reasonable collection potential would have been $238,592.

Respondent may accept an offer-in-compromise based on doubt as to collectibility with special circumstances even if the offer amount is less than petitioner's reasonable collection potential. However, given all other considerations discussed herein, we do not believe that Ms. Cochran abused her discretion by rejecting an offer-in-compromise that bore no relationship to petitioner's ability to pay based on his own calculations.

c. Encouraging Voluntary Compliance With the Tax Laws

We are also mindful that any decision by Ms. Cochran to accept petitioner's offer-in-compromise based on doubt as to collectibility with special circumstances must be viewed against the backdrop of section 301.7122-1(b)(3)(iii), Proced. & Admin. Regs.[11] See Barnes v. Commissioner, T.C. Memo. 2006-150. That section requires that Ms. Cochran deny petitioner's offer-in-

_____

[11] The prospect that acceptance of an offer-in-compromise will undermine compliance with the tax laws militates against its acceptance whether the offer-in-compromise is predicated on promotion of effective tax administration or on doubt as to collectibility with special circumstances. See Rev. Proc. 2003-71, 2003-2 C.B. 517; IRM sec. 5.8.11.2.3; see also Barnes v. Commissioner, T.C. Memo. 2006-150.

compromise if its acceptance would undermine voluntary compliance with tax laws by taxpayers in general.  Thus, even if we were to assume arguendo that petitioner would suffer economic hardship, a finding that we decline to make, we would not find that Ms. Cochran's rejection of petitioner's offer-in-compromise was an abuse of discretion.  As discussed below (in our discussion of petitioner's "equitable facts" argument), we conclude that acceptance of petitioner's offer-in-compromise would undermine voluntary compliance with tax laws by taxpayers in general.

   2.   Public Policy and Equity Considerations

   Petitioner asserts that respondent abused his discretion by not accepting the equitable facts of this case as grounds for an offer-in-compromise.  In support of his assertion, petitioner argues:  (1) The longstanding nature of this case justifies acceptance of the offer-in-compromise; and (2) respondent failed to consider petitioner's other "equitable facts".[12]

---

[12]  Petitioner also argues that respondent abused his discretion by relying on the second example in IRM sec. 5.8.11.2.2(3).  This section deals with effective tax administration offers-in-compromise.  See 1 Administration, Internal Revenue Manual (CCH), sec. 5.8.11.2.2(3), at 16,378.  As discussed above, petitioner does not qualify for an effective tax administration offer-in-compromise because he does not have the ability to pay his outstanding tax liability in full.  Thus, we need not consider whether the example in the IRM is analogous to petitioner's case.

### a. Longstanding Case

Petitioner asserts that the legislative history requires respondent to resolve "longstanding" cases by forgiving penalties and interest which would otherwise apply. Petitioner argues that, because this is a longstanding case, respondent abused his discretion by failing to accept their offer-in-compromise.

Petitioner's argument is essentially the same considered and rejected by the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, 447 F.3d at 711-712. See also Keller v. Commissioner, T.C. Memo. 2006-166; Barnes v. Commissioner, supra. We reject petitioner's argument for the same reasons stated by the Court of Appeals. We add that petitioner's counsel participated in the appeal in Fargo, as counsel for the amici. On brief, petitioner suggests that the Court of Appeals knowingly wrote its opinion in Fargo in such a way as to distinguish that case from the cases of counsel's similarly situated clients (e.g., petitioner), and to otherwise allow those clients' liabilities for penalties and interest to be forgiven. We do not read the opinion of the Court of Appeals in Fargo to support that conclusion. See Keller v. Commissioner, supra; Barnes v. Commissioner, supra.

Respondent's rejection of petitioner's longstanding case argument was not arbitrary or capricious.

### b. Petitioner's Other "Equitable Facts"

Petitioner argues that respondent abused his discretion by failing to consider the other "equitable facts" of this case. Petitioner's "equitable facts" include reference to: (1) Petitioner's reliance on Bales v. Commissioner, T.C. Memo. 1989-568;[13] (2) petitioner's reliance on Hoyt's enrolled agent status; (3) Hoyt's criminal conviction; (4) Hoyt's fraud on petitioner; and (5) other letters and cases. The basic thrust of petitioner's argument is that he was defrauded by Hoyt and that, if he were held responsible for penalties and interest incurred as a result of his investment in a tax shelter, it would be inequitable and against public policy. Petitioner's argument is not persuasive.

While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two examples. See sec.

---

[13] Bales v. Commissioner, T.C. Memo. 1989-568, involved deficiencies determined against various investors in several Hoyt partnerships. This Court found in favor of the investors on several issues, stating that "the transaction in issue should be respected for Federal income tax purposes." Taxpayers in many Hoyt-related cases have used Bales as the basis for a reasonable cause defense to accuracy-related penalties. This argument has been uniformly rejected by this Court and by the Courts of Appeals for the Sixth, Ninth, and Tenth Circuits. See, e.g., Hansen v. Commissioner, 471 F.3d 1021 (9th Cir. 2006), affg. T.C. Memo. 2004-269; Mortensen v. Commissioner, 440 F.3d 375, 390-391 (6th Cir. 2006), affg. T.C. Memo. 2004-279; Van Scoten v. Commissioner, 439 F.3d 1243, 1254-1256 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs. The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years. The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions. Neither example bears any resemblance to this case. Unlike the exceptional circumstances exemplified in the regulations, petitioner's situation is neither unique nor exceptional in that his situation mirrors those of numerous other taxpayers who claimed tax shelter deductions in the 1980s and 1990s. See Keller v. Commissioner, supra; Barnes v. Commissioner, T.C. Memo. 2006-150.

Of course, the examples in the regulations are not meant to be exhaustive, and petitioner has a more sympathetic case than the taxpayers in Fargo v. Commissioner, supra at 714, for whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception". Such considerations, however, have not kept this Court from finding investors in the Hoyt tax shelters to be liable for penalties and interest, nor have they prevented the Courts of Appeals for the Sixth, Ninth, and Tenth Circuits from affirming our decisions to that effect. See Hansen v. Commissioner, 471 F.3d 1021 (9th Cir. 2006), affg. T.C. Memo. 2004-269; Mortensen v. Commissioner, 440 F.3d 375 (6th Cir.

2006), affg. T.C. Memo. 2004-279; <u>Van Scoten v. Commissioner</u>, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

Ms. Cochran testified that she considered all of Ms. Merriam's and petitioner's assertions, including the numerous letters and exhibits. Nevertheless, Ms. Cochran determined that petitioner did not qualify for an offer-in-compromise.

The mere fact that petitioner's "equitable facts" did not persuade respondent to accept his offer-in-compromise does not mean that those assertions were not considered. The notice of determination and Ms. Cochran's testimony demonstrate respondent's clear understanding and careful consideration of the facts and circumstances of petitioner's case. We find that respondent's determination that the "equitable facts" did not justify acceptance of petitioner's offer-in-compromise was not arbitrary or capricious, and thus it was not an abuse of discretion.

We also find that compromising petitioner's case on grounds of public policy or equity would not enhance voluntary compliance by other taxpayers.[14] A compromise on that basis would place the Government in the unenviable role of an insurer against poor business decisions by taxpayers, reducing the incentive for taxpayers to investigate thoroughly the consequences of transactions into which they enter. It would be particularly

---

[14] See <u>supra</u> note 11.

inappropriate for the Government to play that role here, where the transaction at issue is participation in a tax shelter. Reducing the risks of participating in tax shelters would encourage more taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws.  See Barnes v. Commissioner, supra.

C.    Petitioner's Other Arguments

    1.    Compromise of Penalties and Interest in an Effective Tax Administration Offer-in-Compromise

Petitioner advances a number of arguments focusing on his assertion that respondent determined that penalties and interest could not be compromised in an effective tax administration offer-in-compromise.  Petitioner argues that such a determination is contrary to legislative history and is therefore an abuse of discretion.  As discussed above, petitioner does not qualify for an effective tax administration offer-in-compromise because he does not have the ability to pay his outstanding tax liability in full.  Thus, we do not need to consider whether respondent can or should compromise penalties and interest in an effective tax administration offer-in-compromise.

    2.    Information Sufficient for the Court To Review Respondent's Determination

Petitioner argues that respondent failed to provide the Court with sufficient information so that the Court can conduct a

"thorough, probing, and in-depth" review of respondent's determinations. Petitioner's argument is without merit.

Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect. Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).[15] The burden was on petitioner to show that respondent abused his discretion. The burden was not on respondent to provide enough information to show that he did not abuse his discretion. Nevertheless, we find that we had more than sufficient information to review respondent's determination.

### 3. Deadline for Submission of Information

Petitioner argues that Ms. Cochran abused her discretion by not allowing his counsel additional time to submit information to be considered. Petitioner's argument is not supported by the record.

Petitioner asserts that he was "initially only given weeks" to provide all information. However, he ignores the fact that Ms. Cochran granted his requested extension and allowed him until June 1, 2004, to submit information. Additionally, petitioner has not identified any documents or other information that he

---

[15] While sec. 7491 shifts the burden of proof and/or the burden of production to the Commissioner in certain circumstances, this section is not applicable in this case because respondent's examination of petitioner's returns did not commence after July 22, 1998. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

believes Ms. Cochran should have considered but that he was unable to produce because of the deadline for submission.  Given the thoroughness and the amount of information submitted, it is unclear why petitioner needed additional time.  We do not believe that Ms. Cochran abused her discretion by establishing a deadline for the submission of information.

4.  Mrs. Johnson's Pending Innocent Spouse Case

Petitioner argues that Ms. Cochran abused her discretion by considering Mrs. Johnson's income and assets even though Mrs. Johnson currently has an innocent spouse case pending before the Tax Court.[16]  Petitioner's argument is without merit.

The final notice and the notice of determination were issued to petitioner only.  Nevertheless, petitioner filed a Form 656 jointly with Mrs. Johnson and indicated that he was seeking to compromise both his and Mrs. Johnson's outstanding tax liabilities for 1981 through 1996.  Additionally, the Form 433-A was submitted jointly and included the assets of both petitioner and Mrs. Johnson.  Petitioner did not identify which assets, if any, belonged to Mrs. Johnson, and instead grouped all of the assets together.  It is not reasonable to expect Ms. Cochran to

---

[16]  In support of his argument, petitioner cites sec. 6015(e)(1)(B)(i), which states that "no levy or proceeding in court shall be made, begun, or prosecuted against" a taxpayer requesting innocent spouse relief.  This section is not relevant. There is no indication that respondent has sought to levy against Mrs. Johnson's separate property.

separate petitioner's assets from Mrs. Johnson's assets when petitioner has given her no information on which to base that separation. Given that petitioner was offering to compromise both his and Mrs. Johnson's outstanding tax liabilities, and given the manner in which petitioner presented the information to Ms. Cochran, it was not arbitrary or capricious for Ms. Cochran to consider Mrs. Johnson's income and assets in evaluating the joint offer-in-compromise.

5.   Efficient Collection Versus Intrusiveness

Petitioner argues that respondent failed to balance the need for efficient collection of taxes with the legitimate concern that the collection action be no more intrusive than necessary. See sec. 6330(c)(3)(C). Petitioner's argument is not supported by the record.

Petitioner has an outstanding tax liability. In his section 6330 hearing, petitioner proposed only an offer-in-compromise. Because no other collection alternatives were proposed, there were no less intrusive means for respondent to consider. We find that respondent balanced the need for efficient collection of taxes with petitioner's legitimate concern that collection be no more intrusive than necessary.

D.   Conclusion

Petitioner has not shown that respondent's determination was arbitrary or capricious, or without sound basis in fact or law.

For all of the above reasons, we hold that respondent's determination was not an abuse of discretion, and respondent may proceed with the proposed collection action.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.