T.C. Memo. 2008-161

UNITED STATES TAX COURT

LARRY D. MCCLANAHAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19287-05L.                    Filed June 26, 2008.

<u>Gary R. Dettloff</u>, for petitioner.

<u>John R. Bampfield</u>, for respondent.

MEMORANDUM OPINION

GALE, <u>Judge</u>:  Pursuant to section 6330(d)(1),[1] petitioner

seeks review of respondent's determination to maintain a lien

filing with respect to petitioner's unpaid income tax for 2000,

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986, as amended, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

2001, and 2002.  This case is before us on respondent's motion for summary judgment (motion).  Petitioner was afforded an opportunity to respond and timely did so (response).  For the reasons set forth below, we shall grant respondent's motion.

## Background[2]

At the time of filing the petition, petitioner resided in Tennessee.

The petition was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 concerning petitioner's income tax liability for 2000, 2001, and 2002.  Thereafter, the Court granted respondent's motion to remand the case to the Internal Revenue Service Office of Appeals for the purpose of considering petitioner's proposed collection alternatives (second hearing).  At the conclusion of the second hearing respondent issued a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (supplemental notice of determination).

Petitioner's underlying tax liabilities for 2000, 2001, and 2002 are based on assessments of unpaid amounts reported on petitioner's income tax returns for those years as due. Petitioner's filing status on those returns was married, filing separately.  Petitioner has not disputed the underlying

---

[2] The following findings are established in the record and/or are undisputed.

liabilities. As of the time respondent issued petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, the amounts of petitioner's unpaid liabilities were $21,485.62, $22,237.96, and $22,198.39 for 2000, 2001, and 2002, respectively, or a total of $65,921.97.

Respondent contends, and petitioner does not dispute, that the only issues petitioner raised during the second hearing were collection alternatives. Petitioner made two offers-in-compromise on the basis of "Doubt as to Collectibility" during the second hearing, the first in the amount of $15,000 and the second in the amount of $29,030, to settle all of his outstanding liabilities for 2000, 2001, and 2002. Petitioner also proposed a partial payment installment agreement during the second hearing to pay $294 per month for an unspecified number of months.

## Discussion

"Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials." Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b). Factual inferences are viewed in a light most favorable to the nonmoving party, and the moving party bears the burden of proving that there is no genuine issue of material fact. Craig v. Commissioner, 119 T.C. 252, 260 (2002); Dahlstrom v.

Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).  The party opposing summary judgment must set forth specific facts which show that a genuine question of material fact exists and may not merely rely on allegations or denials in the pleadings.  Grant Creek Water Works, Ltd. v. Commissioner, 91 T.C. 322, 325 (1988); Casanova Co. v. Commissioner, 87 T.C. 214, 217 (1986).

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a person liable for taxes (taxpayer) when a demand for the payment of the taxpayer's liability for the taxes has been made and the taxpayer fails to pay those taxes.  Such a lien arises when an assessment is made.  Sec. 6322.  Section 6323(a) requires the Secretary to file a notice of Federal tax lien if such lien is to be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor.  Lindsay v. Commissioner, T.C. Memo. 2001-285, affd. 56 Fed. Appx. 800 (9th Cir. 2003).

Section 6320 provides that the Secretary shall furnish the taxpayer with written notice of the filing of a notice of lien and of the taxpayer's right to a hearing concerning the lien.  Sec. 6320(a)(1), (3).  If a hearing is timely requested, the taxpayer may raise at the hearing "any relevant issue" relating to the unpaid tax or the proposed lien, including offers of

collection alternatives such as an offer-in-compromise or an installment agreement.  Sec. 6330(c)(2)(A).

At the conclusion of the hearing, the Appeals employee must determine whether and how to proceed with collection and shall take into account (i) the verification that the requirements of any applicable law or administrative procedure have been met; (ii) the relevant issues raised by the taxpayer, including spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives; and (iii) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

Where the underlying tax liability is properly at issue, we review the determination de novo.  E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the underlying tax liability is not at issue, we review the determination for abuse of discretion.  Id.  at 182.

In his motion, respondent contends that he is entitled to judgment as a matter of law because the settlement officer conducting the second hearing evaluated, and rejected, petitioner's offers-in-compromise and proposed installment agreement "in accordance with the provisions of the Internal Revenue Manual."  Petitioner argues that the settlement officer

abused her discretion in rejecting his collection alternatives and sustaining the lien.

As discussed below, upon review of the motion and response, we find that no genuine issues of material fact remain and that respondent is entitled to judgment in his favor as a matter of law.

Section 7122 authorizes the Secretary to compromise any civil case arising under the internal revenue laws and requires him to prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute. Sec. 7122(a), (d)(1). A compromise based on "doubt as to collectibility" (which petitioner seeks) may be accepted "where the taxpayer's assets and income are less than the full amount of the liability." Sec. 301.7122-1(b)(2), Proced. & Admin. Regs. With respect to offers-in-compromise on this basis, we observed in Murphy v. Commissioner, 125 T.C. 301, 309 (2005), affd. 469 F.3d 27 (1st Cir. 2006):

> Generally, under * * * [the Commissioner's]
> administrative pronouncements, an offer to compromise
> based on doubt as to collectibility will be acceptable
> only if the offer reflects the reasonable collection
> potential of the case (i.e., that amount, less than the
> full liability, that the IRS could collect through
> means such as administrative and judicial collection
> remedies). Rev. Proc. 2003-71, sec. 4.02(2), 2003-2
> C.B. 517. * * *

See also 1 Administration, Internal Revenue Manual (IRM) (CCH), pt. 5.8.1.1.3(3), at 16,253-16,254 (Sept. 1, 2005) ("Absent special circumstances, a Doubt as to Collectibility (DATC) offer amount must equal or exceed a taxpayers [sic] reasonable collection potential (RCP) in order to be considered for acceptance."). The taxpayer's reasonable collection potential includes realizable equity in assets owned by the taxpayer as well as amounts collectible from the taxpayer's future income after allowing for payment of necessary living expenses. 1 Administration, IRM (CCH), pt. 5.8.4.4.1, at 16,307 (Sept. 1, 2005).

The Commissioner's published guidelines provide the basis for (i) calculation of a taxpayer's reasonable collection potential using national and local allowances and other standards, and (ii) a determination, based on the facts and circumstances of each taxpayer, that use of the published schedules will not result in the taxpayer's lacking adequate means to provide for basic living expenses. See sec. 7122(d)(2); sec. 301.7122-1(c)(2), Proced. & Admin. Regs.; 1 Administration, IRM (CCH), pt. 5.8.4.4, at 16,306 (Sept. 1, 2005); see also Lemann v. Commissioner, T.C. Memo. 2006-37.

Exceptions to the general rule that an offer-in-compromise based on doubt as to collectibility must equal or exceed the taxpayer's reasonable collection potential are made where there

are "special circumstances".  See 1 Administration, IRM (CCH), pt. 5.8.4.3, at 16,306 (Sept. 1, 2005).  Special circumstances include "circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the reasonable collection potential".  Murphy v. Commissioner, supra at 309.  Special circumstances that may cause an offer to be accepted notwithstanding that it is for less than the taxpayer's reasonable collection potential include, but are not limited to, advanced age, poor health, history of unemployment, disability, dependents with special needs, and medical catastrophe.  Lemann v. Commissioner, supra; see also Murphy v. Commissioner, supra at 309; sec. 301.7122-1(c)(3), Proced. & Admin. Regs.; 1 Administration, IRM (CCH), pt. 5.8.4.3, pt. 5.8.11, at 16,373 through 16,383-7 (Sept. 1, 2005).

"The decision to entertain, accept or reject an offer in compromise is squarely within the discretion of the appeals officer and the IRS in general." Kindred v. Commissioner, 454 F.3d 688, 696 (7th Cir. 2006) (affirming an order granting the Commissioner summary judgment).  Generally, where an Appeals employee has followed the Commissioner's guidelines to ascertain a taxpayer's reasonable collection potential and rejected the taxpayer's collection alternative on that basis, we have found no abuse of discretion.  Lemann v. Commissioner, supra; see also Schulman v. Commissioner, T.C. Memo. 2002-129.

With regard to installment agreements entered into on or after October 22, 2004, section 6159(a) authorizes the Secretary to enter into installment agreements to satisfy tax liabilities where he determines that doing so will facilitate full or partial collection. Generally, we have held that it is not an abuse of discretion for purposes of sections 6320 and 6330 when an Appeals employee relies on guidelines published in the IRM to evaluate a proposed installment agreement. See, e.g., Orum v. Commissioner, 123 T.C. 1, 13 (2004), affd. 412 F.3d 819 (7th Cir. 2005); Etkin v. Commissioner, T.C. Memo. 2005-245.

We first consider whether the settlement officer abused her discretion in rejecting petitioner's offers-in-compromise. Petitioner has not disputed respondent's contention that petitioner had three whole life insurance policies with a net cash surrender value of $32,976.50. As noted, under the Commissioner's published guidelines a doubt as to collectibility offer must reflect the taxpayer's reasonable collection potential. In order to calculate reasonable collection potential, the IRM divides a taxpayer's resources into "components of collectibility" including, inter alia, assets and future income, and defines "Assets" as "The amount collectible from the taxpayers [sic] net realizable equity in assets." 1 Administration, IRM (CCH), pt. 5.8.4.4.1. The IRM further provides methods for valuing a taxpayer's components of

collectibility. See 1 Administration, IRM (CCH), pt. 5.8.4.4, pt. 5.8.5, at 16,333 through 16,339-17 (Sept. 1, 2005).

According to the "Financial Analysis" provisions of the IRM applicable to evaluating offers-in-compromise when the taxpayer owns a (whole) life insurance policy, if "The taxpayer will retain or sell the policy to help fund the offer" (rather than borrow against it), then "Equity is the cash surrender value." 1 Administration, IRM (CCH), pt. 5.8.5.3.7(2), at 16,339-2 (Sept. 1, 2005). Petitioner admits that during the second hearing he "agreed in principle to liquidate life insurance in support of an offer on his part." In view of the published guidelines, we do not believe that it was an abuse of discretion for the settlement officer to conclude, as she did, that the $32,976.50 cash surrender value constituted the realizable equity in petitioner's whole life insurance policies.

Petitioner argues that because he and his spouse "are in their older years", only $16,500 of the $32,976.50 cash surrender value should be considered realizable equity ("essentially splitting the difference") in order to preserve the remaining funds for petitioner's spouse in the event petitioner predeceases her. We disagree. Petitioner provides no authority, and we are not aware of any provision in the published guidelines, that requires that the Commissioner adjust the realizable equity in a

taxpayer's life insurance policies for this reason.[3]  Under the
IRM, whole life insurance policies are treated as discretionary
investments that create an asset which may be liquidated, or
against which the taxpayer may borrow, for purposes of computing
his or her reasonable collection potential.  See 1
Administration, IRM (CCH), pt. 5.8.5.5.3(3), at 16,339-11 (Sept.
1, 2005); 2 Administration, IRM (CCH), pt. 5.15.1.10, at 17,664
(May 1, 2004), pt. 5.15.1.22, at 17,667-10 (May 1, 2004).

In addition to petitioner's whole life insurance policies,
the settlement officer determined, and petitioner has not
disputed, that petitioner had realizable equity of $50 in cash.

Petitioner takes issue with the settlement officer's further
determination that petitioner had realizable equity of $3,623 in
retirement accounts and $40,700 in his residence, as well as the
officer's determination that petitioner's future income would
leave $452 available per month for 48 months, totaling $21,696,
to pay towards his Federal income tax liabilities.  We find it
unnecessary to decide whether the settlement officer's
determination of these amounts was appropriate because, even if
all of the foregoing sources were disregarded, petitioner's
reasonable collection potential would be $33,026.50; that is, the

---

[3] As to whether petitioner's argument concerning retention
of some of his interest in the life insurance policies might be
construed as a claim of "special circumstances", see infra note
5.

net realizable equity in his whole life insurance policies and cash.  Petitioner's highest offer-in-compromise was $29,030, an amount less than his reasonable collection potential computed without regard to his future income[4] or any other assets.[5]  On

---

[4] Because we conclude that petitioner's realizable equity in his life insurance policies alone justified the settlement officer's rejection of his offers-in-compromise, we need not consider other arguments petitioner advanced that pertain to the proper measurement of the realizable equity in the residence jointly held with his spouse or to his future income potential (such as the appropriate geographical index for his living expenses or local taxes).

[5] Petitioner, who was represented by counsel, has not argued that he made a "Doubt as to Collectibility with Special Circumstances" offer-in-compromise that would "warrant acceptance for less than the amount of the calculated reasonable collection potential".  See 1 Administration, IRM (CCH), pt. 5.8.4.3, at 16,306 (Sept. 1, 2005).  However, we note that petitioner has alluded in his submissions to various factors that might be construed as "special circumstances" under the IRM, including "hardship" if the equity in his residence were used in the offer, the improper inclusion among available assets of a vehicle necessary to the conduct of petitioner's business, and the advanced age of petitioner and his spouse.  Nonetheless, these factors are generally irrelevant to the realizable equity in his life insurance policies, which we have concluded provided a sufficient basis for the settlement officer's rejection of petitioner's offered collection alternatives.

As for any "special circumstances" surrounding the life insurance policies, petitioner's argument that he should be allowed to retain one-half of the realizable equity in the policies in view of his advanced age, to provide for his spouse in the event he predeceases her, might be construed as a claim of hardship and/or advanced age giving rise to "special circumstances".  However, while admitting that his spouse was employed, petitioner did not disclose his spouse's income or assets to the settlement officer.  Consequently, any failure or refusal by the settlement officer to find "special circumstances" based on the alleged necessity of the life insurance to avoid

(continued...)

the basis of these undisputed facts, we are satisfied that it was not an abuse of discretion for the settlement officer to reject petitioner's offers-in-compromise.  We do not conduct an independent review of what would be an acceptable offer-in-compromise or substitute our judgment for that of the Appeals Office.  Rather, the Appeals employee's decision to reject the offers-in-compromise will not be disturbed unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Hansen v. Commissioner, T.C. Memo. 2007-56; Catlow v. Commissioner, T.C. Memo. 2007-47.

We next consider whether the settlement officer abused her discretion in rejecting petitioner's proposed installment agreement of $294 per month.  In his motion respondent asserts, and petitioner has not denied, that the settlement officer required that petitioner agree to pay the cash surrender value of his whole life insurance policies, namely $32,976.50, in the first payment of any partial payment installment agreement. Respondent asserts that petitioner refused this condition; and as we have discussed above, petitioner's position during the second hearing and in his submissions to this Court has been that he was

_____

[5](...continued)
economic hardship for the surviving spouse was not an abuse of discretion, as the settlement officer was not provided sufficient information on which to base such a finding.

willing to pay only $16,500 of the cash surrender value of his whole life insurance policies towards his tax liabilities.

The IRM addresses these circumstances, stating that "Before a PPIA [partial payment installment agreement] may be granted, equity in assets must be addressed and * * * In most cases taxpayers will be required to use equity in assets to pay liabilities."  2 Administration, IRM (CCH), pt. 5.14.2.2(2), at 17,529 (July 12, 2005).  The published guidelines further state:

> If the taxpayer does not comply with the requirement of making a good faith attempt to use equity in assets * * * the taxpayer will be considered a "won't pay" and seizure/levy action may be appropriate.  If enforcement action is appropriate, a PPIA will not be granted.  * * * [2 Administration, IRM (CCH), pt. 5.14.2.2.2(4), at 17,531 (July 12, 2005).]

We have previously held that it was not an abuse of discretion for the Commissioner to rely on guidelines which required "that taxpayers borrow upon or liquidate current assets" as a condition of entering into an installment agreement.  See Willis v. Commissioner, T.C. Memo. 2003-302.  Accordingly, we find that it was not an abuse of discretion for the settlement officer to reject petitioner's proposed partial payment installment agreement when he refused to make an initial payment corresponding to the realizable equity in his whole life insurance policies.  See Murphy v. Commissioner, supra at 320-321.

In his response petitioner further contends (i) that the settlement officer abused her discretion in failing to balance the need for the efficient collection of taxes with petitioner's legitimate concern that collection action be no more intrusive than necessary, (ii) that the settlement officer failed to consider challenges to the appropriateness of collection actions, and (iii) that the settlement officer failed to consider "spousal defenses".[6]

We first address petitioner's claim that the settlement officer failed to comply with section 6330(c)(3)(C), which requires the officer to consider whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Petitioner's principal defense against the lien was the offer of collection alternatives. We have found that the settlement officer adhered to the Commissioner's published guidelines in evaluating and rejecting petitioner's proposed collection alternatives. Given the deference inherent in an abuse of discretion standard and the failure of petitioner's collection alternatives to meet the

---

[6] In addition, petitioner's response seeks "costs, expenses and attorney's fees". We shall disregard this material as a premature claim for administrative or litigation costs under sec. 7430. See Rules 331(b), 231(a)(2), 143(a).

published standards for acceptance, we see no defect in the settlement officer's balancing.

Petitioner contends that the settlement officer failed to consider "the appropriateness of collection actions" as required by section 6330(c)(2)(A)(ii). We disagree. The supplemental notice of determination states: "As you pointed out, seizure and sale of your personal residence may not be feasible as it is jointly owned with your wife. However, levy on the cash value of your insurance policies would be feasible and appropriate if some other resolution cannot be reached." As discussed, in the collection alternatives petitioner offered at the second hearing he refused to disgorge all of the realizable equity in his life insurance policies. In these circumstances the settlement officer's decision not to withdraw the lien reflected detailed consideration of the appropriateness of collection actions.

Finally, petitioner's claim that the settlement officer failed to consider "spousal defenses" is frivolous. Petitioner did not file joint returns for any of the years to which the collection action at issue is addressed. Accordingly, a spousal defense has no possible relevance.

Conclusion

There is no dispute that petitioner had life insurance policies with a net cash surrender value totaling $32,976.50, plus $50 in cash. The offers-in-compromise and installment agreement petitioner offered in the second hearing failed to reflect the reasonable collection potential evidenced by these assets. Consequently, we conclude that no genuine issues of material fact remain and hold that respondent is entitled to judgment as a matter of law that there was no abuse of discretion in the determination to reject petitioner's collection alternatives and maintain the lien at issue. Accordingly, we shall grant respondent's motion. To reflect the foregoing,

An appropriate order and decision will be entered.