T.C. Memo. 2018-215

UNITED STATES TAX COURT

WILLIAM E. GUSTASHAW AND NANCY D. GUSTASHAW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23873-14L.                    Filed December 27, 2018.

<u>Harris L. Bonnette, Jr.</u>, for petitioners.

<u>Nathan M. Swingley</u> and <u>Timothy A. Lohrstorfer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, <u>Judge</u>:  The Gustashaws filed this collection case pursuant to

section 6330(d) to challenge the Commissioner's notice of determination

sustaining a notice of intent to levy for 2000 and 2003 Federal income tax

[*2] liabilities.[1] They argue that the settlement officer abused his discretion in denying their offer-in-compromise. Additionally the Gustashaws contend that the settlement officer erred in calculating their reasonable collection potential by overvaluing an investment partnership, including the cash value of a life insurance policy, and failing to properly account for the Gustashaws' out-of-pocket health care and vehicle expenses.

The settlement officer did not abuse his discretion in denying the Gustashaws' offer-in-compromise because the Gustashaws' reasonable collection potential far exceeded their final offer amount. He also did not err in calculating the values of the investment partnership and allowance for health care and vehicle expenses. Although the settlement officer erred by including the cash value of the life insurance policy, we find his error harmless, because after omission of the value of the life insurance policy, the Gustashaws' reasonable collection potential still exceeded their final offer.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code at all relevant times. All monetary amounts are rounded to the nearest dollar.

[*3] FINDINGS OF FACT

For a large portion of Mr. Gustashaw's career he worked for various companies in food and beverage operations management. Near retirement he changed fields and became the vice president of a company in the pharmaceutical industry. In this role Mr. Gustashaw was given stock options as part of his compensation.

In the late 1990s, around the time Mr. Gustashaw was retiring, the Gustashaws' financial adviser encouraged them to create an estate plan. As part of this plan the Gustashaws created the Gustashaw Family Declaration of Trust, an irrevocable trust that owns a life insurance policy insuring the lives of Mr. and Mrs. Gustashaw. The trustees of the irrevocable trust are the Gustashaws' sons, and the beneficiaries are the Gustashaws' three children. Between 1997 and 2009 the Gustashaws made $15,000 annual gifts to the irrevocable trust to fund the life insurance premiums. Their final payments occurred in 2010 and 2011 when they made smaller payments of $7,500.

After retiring in 2000 Mr. Gustashaw exercised stock options and generated $8,007,376 of income. To help minimize taxes the Gustashaws' financial planner suggested that they engage in a custom adjustable rate debt structure, commonly referred to as a CARDS transaction, which they did. The Gustashaws' returns

**[*4]** were audited in 2003, and a notice of deficiency was issued in 2006. In the Gustashaws' prior proceeding in this Court, Gustashaw v. Commissioner, T.C. Memo. 2011-195, aff'd, 696 F.3d 1124 (11th Cir. 2012), the Gustashaws conceded deficiencies in tax and were found liable for penalties relating to their CARDS transaction. The Gustashaws appealed, and our decision was affirmed by the U.S. Court of Appeals for the Eleventh Circuit. The Commissioner assessed the tax and penalties for the years in issue, and the Gustashaws made a partial payment of $4,500,000.

On September 11, 2012, the Commissioner issued a notice of intent to levy for 2000 and 2003 to collect unpaid portions of the Gustashaws' liabilities. The Gustashaws timely requested a hearing and stated that they wanted to pursue an installment agreement or an offer-in-compromise.

I.    Collection Hearing

The settlement officer assigned to the Gustashaws' hearing scheduled a telephone conference and requested that the Gustashaws provide a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, a completed tax return for 2011, and proof of estimated tax payments for 2012.

[*5]  At the collection hearing the settlement officer reviewed the Gustashaws' Form 433-A and supporting financial information.  The financial information listed a real estate limited partnership with CHI Investments Corp. (investment partnership) valued at $199,347 and an insurance policy owned by the irrevocable trust valued at $169,425.  They also listed vehicle ownership and operating expenses of $985 and $785, respectively, and out-of-pocket health care expenses of $640.  The Gustashaws' counsel informed the settlement officer that they were in the process of submitting an offer-in-compromise.

A.    First Offer-in-Compromise

A few weeks later the settlement officer received the Gustashaws' first offer-in-compromise for $750,000 to compromise 1998 through 2003 Federal income tax liabilities.  The offer included Form 656, Offer in Compromise, Form 433-A (OIC), Collection Information Statement for Wage Earners and Self-Employed Individuals, a supplemental statement requesting acceptance of the offer under effective tax administration, life expectancy calculations, a copy of the irrevocable trust instrument, and the required payment.

They also included with their offer a letter from the investment partnership's president, which they used to substantiate the value of their interest.  The letter included a list of the Gustashaws' investments "valued for custodial holding

[*6] purposes at the amount of principal left in the Fund", totaling over $400,000. The president stated in her letter that the funds are illiquid and "[t]here is no market for regular sale of these funds." Despite their illiquidity the president stated that "there is a possible secondary market to which a FINRA Broker/Dealer may have access, however I am unaware of how to access that myself. About three years ago one of our investors did sell their Fund holdings on this secondary market, but I believed they received less [than] $.50 on the dollar valuation." The Gustashaws provided a handwritten document and supporting Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., showing $9,767 of distributions from the investment partnership in 2011 but provided no other documentation substantiating its value.

Their supplemental statement requested that the offer be considered under effective tax administration, specifically economic hardship. They argue, among other things, that liquidating their assets would leave them without adequate retirement funds and "they would not have the resources to pay their necessary living expenses", including out-of-pocket health care expenses and vehicle expenses.

Finally, a copy of the irrevocable life insurance trust instrument indicated that it was established by the Gustashaws for the benefit of their three children.

[*7] The Gustashaws' sons were appointed as trustees and pursuant to article III of the trust instrument, it is "irrevocable and unamendable."

The settlement officer informed the Gustashaws that, because their liabilities exceeded their assets and income and because of their involvement in a tax shelter, an effective tax administration offer-in-compromise was inappropriate and their offer would be processed as a doubt as to collectibility offer.[2]

B.      Revised Offer-in-Compromise

The Gustashaws submitted a revised offer-in-compromise in June 2014 under doubt as to collectibility with special circumstances.  They argue that because of their age and lack of employment, the Commissioner's collection of the full liability would leave them unable to cover basic living expenses and such a situation constitutes an economic hardship.

As part of their revised offer the Gustashaws included an updated financial statement on Form 433-A (OIC) and Form 433-A. Their revised Form 433-A (OIC) included, among other items, the investment partnership with a value of $162,197, discounted to $129,758, vehicle operating expenses of $1,330, and out-of-pocket health care expenses of $757.  They did not include the value of the

_____

[2]See sec. 301.7122-1(b)(3), Proced. & Admin. Regs. (an effective tax administration offer is appropriate only when the taxpayer's assets and income exceed the liability and the taxpayer is able to cover the liability in full).

[*8] irrevocable life insurance trust or vehicle ownership expenses. Their revised Form 433-A listed the value of the investment partnership as $162,197 and the cash value of the life insurance policy in the irrevocable trust as $211,795. Additionally they listed vehicle ownership expenses of $918 despite having zero loan balances and no monthly payments on their vehicles, vehicle operating expenses of $412, and out-of-pocket health care expenses of $757.

After reviewing the Gustashaws' documents the settlement officer inquired about a $7,588 out-of-pocket health care expense included in the Gustashaws' calculation. The Gustashaws informed the settlement officer that the expense occurred as a result of Mrs. Gustashaw's procedure to remove a benign tumor and that she would undergo further screening in the future. The Gustashaws included with their response Schedules A for 2012 and 2013 indicating significant medical expenses.

The following week the settlement officer informed the Gustashaws of his calculations. He valued the investment partnership at $405,493, discounted at 60% for a quick sale value of $162,197, and he valued the irrevocable life insurance trust as a dissipated asset at $230,435, discounted 20% for a quick sale at $184,348. Additionally the settlement officer excluded vehicle ownership expenses, allowed $644 in operating expenses, and accepted all but one of the

**[*9]** Gustashaws' out-of-pocket health care expenses. The settlement officer determined that the $7,583 expense for Mrs. Gustashaw's procedure was a one-time expense and excluded it from his calculation. He allowed $283 for health care expenses, which is more than the national standard.

The Gustashaws' counsel and the settlement officer continued their correspondence over the summer, but during this time Mr. Gustashaw suffered a serious leg injury that required hospitalization. This delayed negotiations, and by August several issues in the offer calculation remained unsettled.

Around the middle of August the Gustashaws' counsel sent the settlement officer a letter disputing the values assigned to the investment partnership and the irrevocable life insurance trust and asked the settlement officer to take into account Mr. Gustashaw's recent leg injury. The Gustashaws argued that the investment partnership was worthless and unmarketable. They included a followup letter from the president of the investment partnership stating that "it is unlikely that you could find a secondary market for sale of the funds and the structure of the private placement memorandum does not allow for liquidation of fund investments." Her letter further stated that two holdings had sold on the secondary market, but that "they sold at less than 50 cents on the dollar of remaining principal at that time." Finally she informed the Gustashaws that she

**[*10]** was "not a FINRA broker or rep" and "cannot say with complete and total certainty that [they] might not be able to find some secondary market".

The Gustashaws also argue that the settlement officer improperly included the full cash value of the life insurance policy owned by the irrevocable trust. They point out that the irrevocable trust, created in 1997, is the owner of the policy, and although an older life insurance policy was converted into a new policy within the trust on August 5, 2005, the life insurance policy cannot be a dissipated asset because the notice of deficiency was not issued until almost a year and a half later. They contend that the value of the policy should not be included as a dissipated asset because the Gustashaws are not the owners of the policy and the planning occurred long before their trouble with the Internal Revenue Service. To support this position they submitted two additional documents to the settlement officer. One of those documents was a statement from American United Life Insurance Co. that lists "TR Gustashaw Fam Declar of TR" as the owner of the life insurance policy, a contract date of July 22, 2005, and a cash value of $230,435.

Finally the Gustashaws disputed the out-of-pocket heath care and vehicle expenses that the settlement officer allowed. They argue that considering Mrs. Gustashaw's operation and Mr. Gustashaw's leg injury, the settlement officer should allow the full amount of the Gustashaws' claimed out-of-pocket health care

[*11] expenses.  They further argue that, although the Gustashaws are not making payments on their current vehicles, they will need to replace those vehicles in the future.

The settlement officer informed the Gustashaws that he was not able to accept their position on the investment partnership, life insurance trust, and out-of-pocket health care and vehicle expenses.  But agreeing to an adjustment for Mr. Gustashaw's leg injury and for other undisputed items, the settlement officer adjusted their reasonable collection potential to $2,300,683.  Despite this reduction the settlement officer informed the Gustashaws that he was unable to recommend acceptance of their $1,507,413 offer.  He suggested that if the Gustashaws amended their offer to the amount he had determined to be their reasonable collection potential, he would recommend acceptance.  The following day the Gustashaws submitted an amended offer for $1,650,000.

The settlement officer issued a notice of determination sustaining the levy notice on September 2, 2014.  In his report the settlement officer detailed his calculation of the Gustashaws' reasonable collection potential and their request for a doubt as to collectibility offer-in-compromise with special circumstances.

The Gustashaws filed a timely petition with the Court on October 7, 2014, while residing in Indiana.  In their petition they challenge the determination as to

[*12] tax years 1998 through 2003, arguing that the settlement officer "erred and abused his discretion in not approving the petitioners' offer in compromise made as an alternative to enforced collection". The Court dismissed as to all years except 2000 and 2003 because the notice of determination was only for those years.

II.    Trial

The Gustashaws and the Commissioner set forth many of the same arguments at trial that they had raised in the collection hearing. But the Commissioner also raised one new argument at trial and on brief. He argues that even if the Gustashaws' reasonable collection potential is adjusted for potential errors, the settlement officer's rejection of the offer will still be within his discretion because the corrected reasonable collection potential still exceeds the Gustashaws' final offer. He further contends that any potential miscalculations would be harmless error because the Gustashaws' offer and their reasonable collection potential are too far apart.

OPINION

The question before the Court is whether the settlement officer abused his discretion in rejecting the Gustashaws' offer-in-compromise and sustaining the Commissioner's levy notice for their 2000 and 2003 Federal tax liabilities.

[*13] Specifically the Gustashaws argue that the settlement officer erred in overvaluing a partnership investment and an irrevocable life insurance trust, and understating out-of-pocket health care and vehicle expenses.

I.     Offer-in-Compromise

"The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice".[3]  The regulations provide guidance for the acceptance of such compromises under section 7122 and include three grounds for the compromise of a liability:  (1) doubt as to liability, (2) doubt as to collectibility, and (3) promotion of effective tax administration.[4]  When a taxpayer's liability exceeds assets and income, as is the case here, the Secretary is authorized to accept an offer based on doubt as to collectibility.

When, as here, the underlying liability is not at issue, we review the settlement officer's determination for abuse of discretion.[5]  In reviewing for abuse of discretion we do not conduct an independent review of the collection

---

[3]Sec. 7122(a).

[4]Sec. 301.7122-1(b), Proced. & Admin. Regs.

[5]See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

**[*14]** alternatives, and we do not substitute our judgment for that of the settlement officer; we review only to determine whether the settlement officer's decision was arbitrary, capricious, or without sound basis in fact or law.[6]

A.      Doubt as to Collectibility With Special Circumstances

In determining a doubt as to collectibility offer the settlement officer must determine the taxpayer's ability to pay.[7] A settlement based on a taxpayer's ability to pay allows the taxpayer to retain sufficient funds to cover reasonable basic living expenses, with such expenses determined by evaluating the individual facts and circumstances.[8] These facts and circumstances include the taxpayer's "age, health, marital status, number and age of dependents, education or occupational training, work experience and present and future employment status."[9] Generally the Commissioner will reject a doubt as to collectibility offer-in-compromise if the taxpayer's reasonable collection potential exceeds the offer.[10] A taxpayer's

---

[6]See Klein v. Commissioner, 149 T.C. __, __ (slip op. at 12) (Oct. 3, 2017); Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

[7]Sec. 301.7122-1(c)(2), Proced. & Admin. Regs.

[8]Sec. 301.7122-1(c)(2)(i), Proced. & Admin. Regs.

[9]Internal Revenue Manual (IRM) pt. 5.8.4.3(2) (May 10, 2013).

[10]See, e.g., Johnson v. Commissioner, 136 T.C. 475, 486 (2011), aff'd, 502

(continued...)

[*15] reasonable collection potential is the amount the Commissioner "could collect through other means, including administrative and judicial collection remedies."[11] A settlement officer's rejection of an offer below the taxpayer's reasonable collection potential generally is not an abuse of discretion.[12]

In certain cases the Commissioner "may accept an offer of less than the total reasonable collection potential of a case if there are special circumstances."[13] Special circumstances include, as argued by the Gustashaws, "circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the reasonable collection potential".[14] Generally an economic hardship occurs when collection of the taxpayers' full collection potential leaves them unable to cover reasonable basic living

---

[10](...continued)
F. App'x 1 (D.C. Cir. 2013); Brombach v. Commissioner, T.C. Memo. 2012-265, at *21; see also Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.

[11]Rev. Proc. 2003-71, sec. 4.02(2); see Murphy v. Commissioner, 125 T.C. at 309.

[12]See, e.g., Murphy v. Commissioner, 125 T.C. 301; McClanahan v. Commissioner, T.C. Memo. 2008-161, 95 T.C.M. (CCH) 1625 (2008); Lemann v. Commissioner, T.C. Memo. 2006-37.

[13]Rev. Proc. 2003-71, sec. 4.02(2); IRM pt. 5.8.4.3(3).

[14]Murphy v. Commissioner, 125 T.C. at 309.

[*16] expenses.[15]  Factors indicating economic hardship include the taxpayers'

advanced age, poor health, medical catastrophe, disability, dependents with special

needs, and inability to meet basic living expenses when borrowing against equity

in the their assets.[16]

When considering an offer-in-compromise based on doubt as to

collectibility with special circumstances, the settlement officer must consider

section 301.7122-1(b)(3)(iii), Proced. & Admin. Regs., which requires that he

reject an offer-in-compromise if acceptance "would undermine compliance by

taxpayers with the tax laws."[17]

The Gustashaws argue that their doubt as to collectibility offer should be

considered under special circumstances.  They contend that they would suffer

---

[15]Sec. 301.7122-1(b)(3)(i), Proced. & Admin. Regs.; IRM pt. 5.8.4.2 (May 10, 2013).

[16]Sec. 301.7122-1(c)(3), Proced. & Admin. Regs.; IRM pt. 5.8.11.2.1 (Sept. 23, 2008); see McClanahan v. Commissioner, 95 T.C.M. (CCH) at 1627; Lemann v. Commissioner, T.C. Memo. 2006-37.

[17]Sec. 301.7122-1(b)(3)(iii), Proced. & Admin. Regs.; Rev. Proc. 2003-71, sec. 4.02(3)(a); IRM pt. 5.8.11.2.1(8), pt. 5.8.4.2; see, e.g., Johnson v. Commissioner, T.C. Memo. 2007-29, 93 T.C.M. (CCH) 885, 889-890 (2007), aff'd sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009); Lindley v. Commissioner, T.C. Memo. 2006-229, 92 T.C.M. (CCH) 363, 366-367 (2006), aff'd sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009); Barnes v. Commissioner, T.C. Memo. 2006-150, 92 T.C.M. (CCH) 31, 36-37 (2006), aff'd sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009).

[*17] economic hardship if the Commissioner collected an amount equal to their reasonable collection potential, leaving them unable to cover reasonable basic living expenses because of their age and health. The Gustashaws point to Mr. Gustashaw's recent leg injury and Mrs. Gustashaw's removal of a benign tumor as factors indicating economic hardship. The Gustashaws argue that because of their age and lack of employment and Mr. Gustashaw's having been retired for roughly 16 years, an offer equal to their reasonable collection potential would leave them unable to cover basic living expenses and result in economic hardship.

The settlement officer did not abuse his discretion in failing to accept the Gustashaws' economic hardship argument. Contrary to cases cited by the Gustashaws, the record is clear that the settlement officer considered the Gustashaws' economic hardship arguments but ultimately found them lacking. Even if we accept the Gustashaws' argument that they would suffer economic hardship, we would not find that the settlement officer abused his discretion. The Gustashaws' liabilities are the result of participation in a tax shelter; acceptance of the offer "would place the Government in the unenviable role of an insurer against poor business decisions by taxpayers" and "[i]t would be particularly inappropriate

[*18] for the Government to play that role here".[18] Reducing the risks associated with tax shelters would undermine compliance with the tax laws; therefore the settlement officer's rejection of the offer was appropriate.[19]

Because we do not substitute our judgment for that of the settlement officer,[20] and because the settlement officer's decision was not arbitrary, capricious, or without sound basis in fact or law,[21] we find that the settlement officer did not abuse his discretion in denying the Gustashaws' claim for an offer-in-compromise based on economic hardship.

B.    The Gustashaws' Assets

The Gustashaws further argue that the settlement officer erred in calculating their reasonable collection potential by overvaluing an investment partnership and including the full cash value of a life insurance policy as a dissipated asset.  They

---

[18]Lindley v. Commissioner, 92 T.C.M. (CCH) at 367.

[19]See, e.g., Johnson v. Commissioner, 93 T.C.M. (CCH) at 890; Barnes v. Commissioner, 92 T.C.M. (CCH) at 36.

[20]See Murphy v. Commissioner, 125 T.C. at 320; McClanahan v. Commissioner, 95 T.C.M. (CCH) at 1628.

[21]See Klein v. Commissioner, 149 T.C. __, __ (slip op. at 12) (Oct. 3, 2017) (citing Murphy v. Commissioner, 125 T.C. at 320).

**[\*19]** contend that the settlement officer's erroneous valuation was an abuse of discretion.

          1.       <u>Investment Partnership Value</u>

In considering an offer-in-compromise the Commissioner values a taxpayer's assets at their net realizable equity.[22] Net realizable equity is the "quick sale value (QSV) less amounts owed to secured lien holders with priority over the federal tax lien".[23] The Commissioner generally calculates the quick sale value at 80% of the fair market value of the asset.[24]

The Gustashaws' initial Form 433-A assigned a value in the investment partnership of $199,347, while later Forms 433-A assigned a value of $162,197 and finally $129,758 after a 20% discount. They submitted letters from the president of the investment partnership indicating that the value of the partnership was difficult to determine and "[t]here is no market for regular sale of these funds." The letters referenced sales where, to the president's knowledge, sellers received "$.50 on the dollar" for their interest. The Gustashaws did not provide

---

[22]IRM pt. 5.8.5.4.1(1) (Sept. 30, 2013).

[23]IRM pt. 5.8.5.4.1(1).

[24]IRM pt. 5.8.5.4.1(3).

[*20] any other evidence relating to the investment partnership's value and argue that it is worthless with an appropriate value of zero.

The settlement officer did not abuse his discretion in using a 60% discounted quick sale value for the partnership investment. The record shows that the settlement officer used the values reported by the Gustashaws and reviewed the accompanying documents indicating sales generating less than 50 cents on the dollar. These documents do not conclude that the investment partnership is worthless, only that it would be difficult to sell on the secondary market. Additionally the president's letter indicates that she is not a broker of these types of deals, simply stating that any discount a buyer "would want would probably erase a majority of the remaining value". Finally the letters indicate a possibility of selling the investment partnership interest on the secondary market through a Financial Industry Regulatory Authority (FINRA) broker or dealer. Despite this information the Gustashaws did not contact a FINRA broker and failed to produce further documentation regarding the value of the investment partnership.

Without any further evidence as to the investment partnership's value the settlement officer assigned a discount value of 60%, a discount far greater than advised in the Internal Revenue Manual. The settlement officer's determination of

[*21] the investment partnership's value is reasonably based on the information provided by the Gustashaws and is not an abuse of discretion.

### 2. Life Insurance Policy

The settlement officer included in his calculation of the Gustashaws' reasonable collection potential a discounted cash value of the life insurance policy held by the irrevocable life insurance trust. He included the discounted cash value as a dissipated asset. A dissipated asset is "any asset (liquid or non-liquid) that has been sold, transferred, or spent on non-priority items or debts and that is no longer available to pay the tax liability."[25] But if the taxpayer can show that the dissipated asset was "necessary for the production of income or the health and welfare of the taxpayer or their family", then the asset will not be included in their reasonable collection potential.[26]

The reason to include dissipated assets in a taxpayer's reasonable collection potential "is to deter delinquent taxpayers from wasting money that they owe and should pay as tax."[27] While this may seem harsh because "[i]t treats a taxpayer as

_____

[25]Johnson v. Commissioner, 136 T.C. at 487; I.R.M. 5.8.5.18(1) (Sept. 30, 2013).

[26]IRM pt. 5.8.5.18(1).

[27]McAvey v. Commissioner, T.C. Memo. 2018-142, at *12 (citing Johnson

(continued...)

[*22] having money that he actually doesn't[,] * * * not including dissipated assets in RCP would create a perverse incentive to be profligate:  A taxpayer with a large tax debt could waste his money on nonessential goods and then plead poverty when the taxman came."[28]  Generally dissipated assets are excluded from a taxpayer's reasonable collection potential, but a settlement officer can look back three years from the taxpayer's offer date and include any dissipated assets.[29] Additionally the settlement officer can include assets as dissipated assets

> where it can be shown the taxpayer sold, transferred, encumbered or otherwise disposed of assets in an attempt to avoid the payment of the tax liability or used the assets or proceeds (other than wages, salary, or other income) for other than the payment of items necessary for the production of income or the health and welfare of the taxpayer or their family, after the tax has been assessed or within six months prior to the tax assessment.[30]

The settlement officer can also include assets, because of their specific timing, that occurred "after notification of an examination".[31]

---

[27](...continued)
v. Commissioner, 136 T.C. at 486-487).

[28]Alphson v. Commissioner, T.C. Memo. 2016-84, at *10.

[29]IRM pt. 5.8.5.18(2).

[30]IRM pt. 5.8.5.18(1).

[31]IRM pt. 5.8.5.18(6).

[*23] The Gustashaws made $15,000 premium payments to the life insurance policy owned by the irrevocable trust from 1997 to 2009 and made $7,500 premium payments in 2010 and 2011. These payments were not "necessary for the production of income or the health and welfare of the * * * [Gustashaws] or their family".[32]

Because the Gustashaws' returns were examined in 2003, some of the premium payments to the irrevocable trust are dissipated assets. But the premium payments made before the Gustashaws' examination are not dissipated assets; therefore the amount the settlement officer determined as a dissipated asset, the cash surrender value of the life insurance policy, incorrectly includes the premium payments made before the Gustashaws' examination. While this timing potentially affects the Gustashaws' reasonable collection potential, a "[d]etermination of their exact RCP would be a meaningless exercise" because the Gustashaws' reasonable collection potential far exceeds their final offer when any error is corrected.[33]

---

[32]See IRM pt. 5.8.5.18(1).

[33]Estate of Duncan v. Commissioner, T.C. Memo. 2016-204, at *22 n.5, aff'd, 890 F.3d 192 (5th Cir. 2018).

**[\*24]** The settlement officer erred by including the discounted value of the life insurance policy as a dissipated asset. It is undisputed that the Gustashaws did not have an ownership interest in the policy; it was owned by an irrevocable trust. And we need not decide the precise extent to which some of the premium payments may have been dissipated assets because it would be a meaningless exercise. The exact amount of premium payments that might be includible in the Gustashaws' assets is immaterial because "we uphold determinations when the taxpayer's OIC was far less than the correct RCP."[34]

C.    The Gustashaws' Expenses

The Gustashaws argue that the settlement officer erred in disallowing their out-of-pocket health care expenses and vehicle ownership and operation expenses. They contend that the settlement officer's failure to grant these allowances is an abuse of discretion.

---

[34]Alphson v. Commissioner, at \*16-\*17 (citing Carter v. Commissioner, T.C. Memo. 2007-25, 93 T.C.M. (CCH) 861 (2007), aff'd in part, vacated in part sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009)).

**[\*25]**      1.      <u>Out-of-Pocket Health Care Expenses</u>

A settlement officer must give full consideration to the taxpayer's age and health when determining allowable out-of-pocket health care expenses.[35] Taxpayers claiming "more than the total allowed by the out-of-pocket health care standard, may be allowed more than the standard if they provide documentation to substantiate and justify the additional expenses."[36] Additionally when confronted with special circumstances, the settlement officer must take into account any long-term illnesses, medical conditions, disabilities, and care for dependents with special health needs.[37]

The settlement officer did not abuse his discretion in determining the Gustashaws' out-of-pocket health care expenses. He accepted all but one of them, allowed their expenses to exceed the national standard, took into consideration Mr. Gustashaw's leg injury, and properly excluded the nonrecurring expenses of $7,588.

---

[35]IRM pt. 5.8.4.3(2), pt. 5.15.1.7(3)(b) (Oct. 2, 2012).

[36]IRM pt. 5.15.1.8(8) (Oct. 2, 2012).

[37]Sec. 301.7122-1(c)(3), Proced. & Admin. Regs.; <u>see</u> IRM pt. 5.8.4.2(4) ("Factors establishing special circumstances under DATCSC are the same as those considered under ETA.").

[*26] The Gustashaws argue that the one-time expense of $7,588 is representative of the future health care expenses the Gustashaws might incur, but they provide no support for their claim that this expense or any other health care expense will occur in the future. Instead they rely on the argument that medical expenses increase as people age. It is not an abuse of discretion for a settlement officer to set aside speculative future expenses if the record does not support their inclusion.[38] The settlement officer reviewed the Gustashaws' out-of-pocket health care expenses and allowed all but one, an expense that the parties agree is nonrecurring, and such action is not arbitrary or capricious.

### 2. Motor Vehicle Expenses

A settlement officer is required to factor in taxpayers' necessary transportation expenses in computing their reasonable collection potential.[39] Transportation expenses are necessary if "they are used by taxpayers and their families to provide for their health and welfare and/or the production of income."[40] Transportation expenses include ownership expenses for the purchase or lease of a

---

[38]Brombach v. Commissioner, at *24-*25.

[39]IRM pt. 5.8.5.22.3 (Sept. 30, 2013), pt. 5.15.1.7(4).

[40]IRM pt. 5.8.5.22.3(1).

[*27] vehicle and operating expenses to keep the vehicle on the road.[41] For ownership expenses a taxpayer is "allowed the local standard or the amount actually paid, whichever is less, unless the taxpayer provides documentation to verify and substantiate that the higher expenses are necessary."[42] If a taxpayer owns and uses a vehicle, but there is no loan or lease payment, the taxpayer is entitled only to operating expenses.[43]

The Gustashaws' live in a community without adequate public transportation and need their vehicles to provide for their health and welfare. This much is clear. But because they own each of their vehicles outright, making no payments, the settlement officer disallowed ownership expenses. The Gustashaws argue that the settlement officer abused his discretion by not allowing the local standard for ownership expenses. They contend that their vehicles will need replacing in the future and that the settlement officer should adjust the allowance to allow for their life expectancies and monthly shortfall.

Internal Revenue Manual pt. 5.15.1.7(4)(b) is clear. Because the Gustashaws own their vehicles outright and do not make payments, they are

---

[41]IRM pt. 5.8.5.22.3(2).

[42]IRM pt. 5.8.5.22.3(3).

[43]IRM pt. 5.15.1.7(4)(b).

[*28] entitled only to the local standard for operating expenses. The settlement officer followed the Internal Revenue Manual and did not abuse his discretion in disallowing the Gustashaws' request for ownership expenses.[44]

II.    The Gustashaws' Request for Remand

The Gustashaws argue that the settlement officer's abuse of discretion requires a remand. They also contend that any correction of the settlement officer's errors requires a remand so the parties can continue negotiations. The Commissioner disagrees, arguing that even if we disagree with one of the settlement officer's conclusions, remand is not appropriate for harmless error. He cites Lindley v. Commissioner, T.C. Memo. 2006-229, 92 T.C.M. (CCH) 363 (2006), aff'd sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009), for the proposition that even if the settlement officer erred in his calculations, the Gustashaws' reasonable collection potential would still exceed their last offer, and rejection under these circumstances would not be an abuse of discretion.

We agree. The Court on numerous occasion has found that although a settlement officer erred in his calculations, the error did not change the result of

_____

[44]See Levin v. Commissioner, T.C. Memo. 2018-172, at *32 ("This Court has generally held that there is no abuse of discretion when an Appeals officer relies on guidelines published in the Internal Revenue Manual"); see also Thompson v. Commissioner, 140 T.C. 173 (2013); Aldridge v. Commissioner, T.C. Memo. 2009-276; Etkin v. Commissioner, T.C. Memo. 2005-245.

[*29] the hearing because the taxpayer's reasonable collection potential still exceeded the taxpayer's final offer when the error was corrected.[45]

After correction of the settlement officer's inclusion of the full cash value of the irrevocable life insurance trust, the Gustashaws' corrected reasonable collection potential still exceeds their final offer by over $500,000. Because the Gustashaws did not establish economic hardship and because it is within the settlement officer's discretion to deny an offer below a taxpayer's reasonable collection potential, we find that the settlement officer did not abuse his discretion and remand would be improper.

III.    Conclusion

The Gustashaws have not shown that the settlement officer's actions were arbitrary, capricious, or without sound basis in fact or law. Although the settlement officer did err in his inclusion of the life insurance policy's cash value, the error was harmless and the settlement officer did not abuse his discretion in rejecting the Gustashaws' offer.

---

[45]See, e.g., Carter v. Commissioner, 93 T.C.M. (CCH) at 866; Lindley v. Commissioner, 92 T.C.M. (CCH) at 367.

**[*30]** To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.